Marie **SANNON** et al., Plaintiffs,

v.

**UNITED STATES of America et al., Defendants.**

Ketley **JEAN–BAPTISTE** et al., Plaintiffs,

v.

**UNITED STATES of America et al., Defendants.**

Nos. 74–428–CIV–JLK, 75–2124–CIV–JLK.

United States District Court, S. D. Florida.

Feb. 15, 1977.

---

·Donald I. Bierman, Neil R. Sonnett, Bierman, Sonnett, Beiley & Osman, P. A., Miami, Fla., and Eric M. Lieberman, Rabinowitz, Boudin & Standard, New York City, for plaintiffs.

Patricia Jean Kyle, Asst. U. S. Atty., Miami, Fla., for defendants.

## MEMORANDUM OPINION

JAMES LAWRENCE KING, District Judge.

Petitioners in these cases seek judicial review of proceedings by which the Immigration and Naturalization Service (INS) determined that they were excludable aliens and were not entitled to political refugee status. The issue presented is whether the immigration judges who presided over the petitioners' exclusion hearings erred in refusing to consider their claims for political asylum.

The amended complaints in both cases allege jurisdiction under several statutes.[1] The court has jurisdiction under 28 U.S.C. Section 2241 et seq., (habeas corpus) to review final orders of exclusion. See Pierre v. United States, 525 F.2d 933, 936 (5th Cir. 1976). See also 8 U.S.C. Section 1105a(b).[2]

The petitioners, numbering some 300, are citizens of Haiti. They were intercepted at various times and location at the border of the United States and were paroled into the country pursuant to 8 U.S.C. Section 1182(d)(5).[3] They were subsequently interviewed by members of the Travel Control Section who represent the District Director of the INS. The information from these interviews was forwarded for advice to the State Department's Office of Refugee and Migration Affairs. Based on the interviews and the advice from the State Department, the District Director denied each petitioner's claim for political asylum.

At subsequent hearings to determine the excludability of the petitioners, immigration judges, representing the quasi-judicial branch of INS, ruled that petitioners were excludable aliens because they lacked visas or other required documents enumerated in 8 U.S.C. Section 1182(a)(20).[4] The judges refused to hear evidence proffered by petitioners concerning their claims of political persecution and their requests for asylum under the United Nations Convention and Protocol Relating to the Status of Refugees[5] (hereinafter Protocol). The

1. In addition to habeas corpus, the amended complaints allege jurisdiction under 28 U.S.C. § 1331, 5 U.S.C. § 701 et seq., and 8 U.S.C. § 1329. Since the court finds that it has habeas corpus jurisdiction and that said jurisdiction authorizes the court to grant the relief requested, the court does not reach the question of whether jurisdiction exists under the alternative theories espoused.

2. 8 U.S.C. § 1105a(b) provides: "Notwithstanding the provisions of any other law, any alien against whom a final order of exclusion has been made heretofore or hereafter under the provisions of section 1226 of this title or comparable provisions of any prior Act may obtain judicial review of such order by habeas corpus proceedings and not otherwise."

3. 8 U.S.C. § 1182(d)(5): The Attorney General may in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."

4. 8 U.S.C. § 1182(a): "Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

(20) Except as otherwise specifically provided in this chapter, any immigrant who at the time of application for admission is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality, if such document is required under the regulations issued by the Attorney General pursuant to section 1181(a) of this title;"

5. 19 U.S.T. 6223, T.I.A.S. 6557. (hereinafter: Protocol) The United States became a signatory to the Protocol on November 1, 1968. Article 1 of the Protocol incorporates by reference the 1951 Geneva Convention Relating to the Status of Refugees. Article 1 of the Convention, as modified by the Protocol defines a refugee as, "Any person who, . . . owing to well-founded fear of being persecuted for reasons of race, religion, nationality, membership of a particular social group or political opinion, is outside the country of his nationality and is unable or, owing to such fear, is unwilling to avail himself of the protection of that country, or who, not having a nationality

government's position is that the judges had no jurisdiction to do so.

Petitioners appealed the immigration judges' findings that they were excludable aliens to the State Department's Board of Immigration Appeals. The appeals were denied.

The petitioners complain that they were never afforded a fair hearing by INS on their refugee claims. The initial interviews, they assert, were conducted in a summary fashion within twenty-four hours after they had reached the border. They allege that the interviews were conducted without counsel even though INS was well aware of the availability of counsel who were ready, willing and able to be present at the interviews. Additionally, they claim that they were interviewed without explanation or understanding of what was at issue, without opportunity to be apprised of or to respond to adverse evidence, and in a most precipitous and biased manner.

They allege further that they were given only two and one-half hours prior notice of the subsequent exclusion hearing and that their attorneys were given only one day prior notice. Finally, they complain that at the exclusion hearing they were not permitted to offer evidence relating to their refugee claims. They argue that the procedures by which the refugee claims were denied violated the due process clause of the Fifth Amendment and the regulations and statutes of the United States. The court does not reach the constitutional issue because it holds that petitioners were statutorily entitled to present their asylum claims at the exclusion hearings, and thus that the immigration judges erred in refusing to hear these claims.

At the outset, the court notes that there is little guidance available to assist the court in resolving this difficult issue. No court has passed upon the issue of whether claims for political asylum can be presented by a paroled alien at an exclusion hearing. Therefore, the court must review the statutory scheme together with the Attorney General's applicable regulations [6] *de novo.*

■ Before further analysis, one must recognize a distinction in the posture of aliens within and without the United States. The statutes and regulations distinguish between "excludable" and "deportable" aliens.[7] The former are aliens who have not effected entry into the United States; the latter are aliens who have successfully entered, whether legally or illegally. The parties agree that petitioners are excludable, and not deportable aliens. This is so even though they are in fact physically present, because the authorities concur that those who enter through parole or temporary harborage are considered still "standing at the gates." [8]

## I  STATUTORY AND REGULATORY FRAMEWORK

United States Code Chapter 12 of title 8 governs "Aliens and Nationality."[9]  8 U.S.C. Section 1225 provides that all persons seeking admission to the United States shall first be inspected by immigration officers who operate under authority of the District Director of INS. It is stipulated that petitioners were in fact interviewed by these officers. If the District Director concludes that the applicant for admission is not "clearly and beyond a doubt entitled to land" the applicant is detained for a "fur-

and being outside the country of his former habitual residence, is unable or, owing to such fear, is unwilling to return to it."

**6.** 8 U.S.C. § 1103(a) provides: "The Attorney General shall be charged with the administration and enforcement of . . . all . . . laws relating to the immigration . . . of aliens . . . . He shall establish such regulations . . . as he deems necessary for carrying out his authority . . . ."

**7.** *Compare* 8 U.S.C. §§ 1225, 1226 with §§ 1251, 1252.

**8.** *See. e. g. Shaughnessy v. Mezei,* 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953), *Ahrens v. Rojas,* 292 F.2d 406, 410 (5th Cir. 1961).

**9.** Immigration and Nationality Act of 1952, 66 Stat. 166, codified as 8 U.S.C. § 1101 *et seq.*

ther inquiry" before a special inquiry officer (immigration judge).[10] This "further inquiry" is an exclusion hearing. Section 1226 provides that the immigration judge "shall have authority in any case to determine whether an arriving alien . . . shall be excluded."[11] Such exclusion hearing "shall be the sole and exclusive procedure for determining admissibility . . ".[12] Immigration judges are empowered to "administer oaths and to . . . consider evidence . . . touching the privilege or any alien . . . to enter . . the United States."[13] The decision of the immigration judge may be appealed to the Board of Immigration Appeals.[14]

In deciding whether an alien is excludable, immigration judges must, except for other provisions in the chapter, utilize the tests of 8 U.S.C. Section 1182: "Excludable aliens—general classes." One such general class is found at Section 1182(a)(20): "Immigrant(s) . . . not in possession of a valid unexpired immigrant visa, . . . border crossing identification card, or other valid entry document . . . ."[15] It is stipulated that the immigration judges found that petitioners did not have in their possession the required documents.

Thus were it not for the Protocol, petitioners would have no grounds for objecting to their exclusion. Article 33 of the Protocol provides in pertinent part that "[n]o Contracting State shall expel or return ("refouler") a refugee in any manner whatsoever to the frontiers of territories where

his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion."[16]

To receive protection under the Protocol, however, an alien must first establish that he is a "refugee" within the meaning of that document, i. e. that he has a well-founded fear of persecution.

Because the Protocol was adopted some sixteen years after the Immigration and Nationality Act became law, the Act is silent on the procedures that an alien must follow to establish that he is a "refugee" and thus entitled to protection under the Protocol. The Attorney General has enacted a regulation, however, that purports to delineate how aliens may request political asylum, including that offered by the Protocol. This regulation, 8 C.F.R. Part 108, directs that application for asylum must be made to the District Director of INS, who "may approve or deny the application in the exercise of discretion."[17] The "decision shall be in writing and *no appeal shall lie therefrom.*"[18] A limited exception in this part permits claims under the Protocol to be made again at subsequent "expulsion hearings."[19] The Attorney General has interpreted this exception to apply to deportable aliens only.[20] Thus, Part 108 directs that for excludable aliens asylum claims under the Protocol are adjudicated in a summary, non-evidentiary, final, non-appealable interview with the District Director. The

10. 8 U.S.C. § 1225(b); *see* 8 C.F.R. § 235.

11. 8 U.S.C. § 1226(a).

12. *Id.*

13. 8 U.S.C. § 1225(a).

14. See 8 U.S.C. §§ 1226(b), (c).

15. 8 U.S.C. § 1182(a)(20).

16. United Nations Protocol and Convention Relating to the Status of Refugees, 19 U.S.T. 6223, T.I.A.S. 6557.

17. 8 C.F.R. § 108.2.

18. *Id.* (emphasis supplied).

19. *Id.*

20. The term "expulsion hearing" is not used in the Act. The regulations frequently use the terms "exclusion hearing" (e. g. 8 C.F.R. Section 236.2) and "deportation hearing," 8 C.F.R. Section 242.2(b). It is therefore facially unclear whether "expulsion hearing" refers to both types of hearings or only to deportation hearings. The regulations do use the term "expulsion" under the deportation section (See 8 C.F.R. Section 234.3) but not under the exclusion section. In any case, when regulations may be subject to alternate interpretations, those of the Attorney General are entitled to controlling weight. *See Immigration & Naturalization Serv. v. Stanisic,* 395 U.S. 62, 89 S.Ct. 1519, 23 L.Ed.2d 101 (1969).

government relies upon Part 108 in its contention that the immigration judges who presided over petitioners' exclusion hearing lacked authority to hear their asylum claims because those claims had been finally adjudicated by the District Director. For reasons discussed below, the court finds that Part 108 has either been misconstrued or is invalid, because there exists no justification either in the Act, in the Protocol, or in logic to deny excludable aliens the right to assert asylum claims at an exclusion hearing.

## II  JUSTIFICATION IN THE ACT

8 U.S.C. Section 1226 provides a comprehensive procedure for determinations of admissibility for excludable aliens, including initial interview by an examining officer, a hearing before an immigration judge, and appeal to the board of immigration appeals.[21]

At the hearing mandated by Section 1226, the immigration judge is authorized "to take and consider evidence of or from any person touching the *privilege* of any alien . . . to enter . . . or reside in the United States or concerning any matter which is material and relevant to the enforcement of this chapter and the administration of the Service . . . ."[22] This language contemplates a broad and not a limited scope at the exclusion hearing. Certainly, a claim of political asylum under the Protocol is an assertion of a *privilege* to enter and reside in the United States. Such

a claim is also material and relevant to the enforcement of Chapter 12 (Immigration and Nationality) as well as to the administration of the INS.

■ Like any regulation of the Attorney General under the Act, Part 108 is entitled to the presumption of validity.[23] But clearly the regulation cannot conflict with either the letter or the spirit of the Act unless it has been authorized by some *specific* statutory directive.[24] Nowhere in the Act is there any provision that excludes asylum claims from claims of "privilege to enter." All other claims of excludable aliens are assertable in an exclusion hearing, yet the Attorney General has singled out asylum claims in this regard, and the court can find no justification for it. In fact, claims for political asylum seem to be of the type properly heard at evidentiary hearings. Such claims may involve factual issues that go beyond those which can be decided fairly from short interviews with recently landed aliens, many of whom are physically exhausted and unfamiliar with the language. In addition, the legislative history of the act[25] reveals that Congress intended to rewrite the Immigration laws in a spirit of compassion and humanity toward excludable and deportable aliens alike.[26] Little but administrative convenience is served by foreclosing the consideration of asylum at an evidentiary exclusion hearing. If the asylum claims have substance, it is neither

---

**21.** *See* 8 U.S.C. § 1226(a), (b), (c). The government does not contest petitioners' rights to a hearing before an immigration judge, but contends that the immigration judge is powerless to hear evidence bearing on the issue of asylum. *Immigration & Naturalization Serv. v. Stanisic,* 395 U.S. 62, 89 S.Ct. 1519, 23 L.Ed.2d 101 (1969) is therefore inapposite. In that case, an alien crewman had entered the United States under a "conditional permit" authorized by 8 U.S.C. § 1282(a). He claimed political asylum and his claim was heard and refused by the District Director, and he was thereafter deported under 8 U.S.C. § 1282(b). The issue in *Stanisic* was whether an alien crewman must be given a hearing before an immigration judge prior to deportation. The court ruled that no hearing is required, because the Immigration and Naturalization Act treats alien *crewmen* distinctly from other excludable or

deportable aliens, and does not require a hearing. Significantly, 8 U.S.C. § 1226(b), which grants a hearing to excludable aliens, specifically exempts alien crewmen. Therefore, *Stanisic* gives this court no guidance.

**22.** 8 U.S.C. § 1225(a) (emphasis added).

**23.** The regulations are authorized by the Act in a broad grant of authority to the Attorney General. See note 6 *supra.*

**24.** The Attorney General is authorized merely to establish "necessary" regulation. See note 6 *supra.*

**25.** 1952 U.S.Code Cong. & Ad.News, pp. 1653–1756.

**26.** *Id.* at p. 1756.

humane nor compassionate nor rational to prohibit their subsequent resolution before an impartial immigration judge. Thus the removal of asylum claims from the exclusion hearing, purportedly the effect of Part 108, is an arbitrary and invalid result, without support from the Act.

## III  JUSTIFICATION IN THE PROTOCOL AND IN LOGIC

Part 108 furthermore finds no justification either in the Protocol or in logic. Consider two aliens who, fleeing their homeland, arrive at the United States. The first enters illegally and secrets himself in the community until he is finally caught. Because he "has" officially entered, he is deportable. The second alien chooses to surrender himself upon entry and is thereupon paroled into the country. According to the prevailing interpretations [27] he is excludable.

The Protocol does not differentiate between the rights these two aliens should have,[28] and logically it is difficult to see why the excludable alien should be at any disadvantage. Part 108, however, renders the excludable alien at a monumental procedural disadvantage in asserting rights under the Protocol. Because of the limited exception for deportable aliens in Part 108,[29] a deportable alien's asylum claim does not stop at the District Director but may be pursued according to the Act through two additional phases. First, the alien may reassert the asylum claim at a deportation hearing [30] at which he may present evidence, cross-examine witnesses, and obtain the representation of counsel.[31] Subsequently, he may assert the claim again on appeal to the Board of Immigration Appeals.[32]

In contrast, if the Attorney General's interpretation or Part 108 controls, the excludable alien is afforded only one opportunity to establish his claim for refugee status under the Protocol and that opportunity is the non-evidentiary, summary interview before the District Director's examining officer, the results of which become the basis for the District Director's discretionary, final, non-appealable decision. Since the Protocol grants the same rights to both of the hypothetical aliens, the resulting disparity in number and types of opportunities available for the establishment of these rights finds no justification in the Protocol, in logic or in fairness. It is true that even without Part 108, the Act differentiates

27.  See note 8 *supra*.

28.  Protocol, note 16 *supra*, Article 33. Neither alien in the above example can invoke the protection of Article 32, for that Article applies only to aliens *in* the United States *lawfully. See Kan Kam Lin v. Rinaldi*, 361 F.Supp. 177 (D.N.J.1973).

29.  See discussion accompanying note 20 *supra*.

30.  By statute, the Attorney General is "authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to persecution on account of race, religion, or political opinion and for such period of time as he deems to be necessary." 8 U.S.C. § 1253(h). The statute was enacted before the Protocol was signed by the United States, so probably this provision does little more than foreshadow the provisions of that treaty. In view of the Protocol, this section is now unnecessary. Regulations enacted pursuant to § 1253(h) provide that the alien must be notified of his opportunity to present a claim under that section, which amounts to a political asylum claim under the Protocol, and that the alien must make this claim *only* at the deportation hearing. *See* 8 C.F.R. §§ 242.17(c), (d).

31.  The deportation hearing affords full due process protections to the alien. 8 U.S.C. Section 1252(b): (1) the alien shall be given notice, reasonable under all the circumstances, of the nature of the charges against him and of the time and place at which the proceedings will be held; (2) the alien shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose; (3) the alien shall have a reasonable opportunity to examine the evidence against him, to present evidence in his own behalf, and to cross-examine witnesses presented by the Government; and (4) no decision of deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence. *See* 8 C.F.R. § 242.17(c).

32.  *See* 8 C.F.R. § 242.21.

between excludable and deportable aliens.[33] Congress apparently has decided that deportable aliens, who are at least residents, even if illegal, are entitled to more procedural protection than are (non-resident) excludable aliens. In circumstances like the one hypothesized above, this distinction may not seem appropriate, but absent some overriding constitutional impediment, which the court finds unnecessary to examine, the court is not at liberty to question this legislative distinction. However, the Act does provide excludable aliens with an evidentiary exclusion hearing[34] and with a right of appeal therefrom.[35]

Part 108 removes the asylum claims of excludable aliens from the normal channels approved by the Act and instead provides a summary and non-appealable procedure to adjudicate them.[36] Thus it exacerbates any asymmetry in treatment the Act possesses. This renders the rights of excludable aliens far more tenuous than those of deportable aliens under the Protocol, a distinction not envisioned by that agreement nor supported in reason. For this reason and reasons offered above, Part 108 must not be interpreted to foreclose consideration of asylum claims at exclusion hearing,[37] and if it must be so interpreted, it is to that extent invalid.

## IV CONCLUSION

Analysis of the applicable statutes and regulations convinces this court that the exclusion hearing mandated by 8 U.S.C. Section 1226 is not limited to a determination of whether any of the excludability criteria of Section 1182 are met. The court holds that the Immigration and Naturalization Act gives immigration judges authority, notwithstanding 8 C.F.R. Part 108, to hear and consider evidence relevant to an excludable alien's claim for asylum under the Protocol. The immigration judges who presided over the exclusion hearings of petitioners improperly refused to hear their asylum claims. Therefore these cases are remanded to the INS for exclusion hearings wherein petitioners shall be allowed to present evidence, in a full, fair adversary hearing, pertinent to their claims for political asylum under the Protocol.

---

**33.** *See* note 7 *supra.* This distinction has been supported in *Leng May Ma v. Barber,* 357 U.S. 185, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958).

**34.** At the exclusion hearing provided by 8 U.S.C. § 1225(b), the immigration judge shall "administer oaths, present and receive evidence, and interrogate, examine, and cross-examine the alien or witnesses." 8 U.S.C. § 1226(a). Regulations providing for more detailed procedures are found at 8 C.F.R. Part 236, specifically § 236.2. For further discussion see text accompanying notes 10–13 *supra.*

**35.** 8 U.S.C. § 1226(b).

**36.** See text accompanying notes 19–20 *supra.*

**37.** If the Attorney General were to interpret the exception in Part 108 to apply to excludable aliens as well as deportable aliens, the most serious objections to the regulations would be erased. For discussion of the exception in Part 108 see note 20 *supra* and accompanying text.