**Marie SANNON et al., Petitioners,**

v.

**UNITED STATES of America et al., Respondents.**

**Ketley JEAN–BAPTISTE et al., Petitioners,**

v.

**UNITED STATES of America et al., Respondents.**

**Nos. 74–428–Civ–JLK, 75–2124–Civ–JLK.**

United States District Court, S. D. Florida.

Oct. 11, 1978.

Donald I. Bierman, Ira Kurzban, Miami, Fla., for petitioners.

J. V. Eskenazi, U. S. Atty., Miami, Fla., for respondents.

## MEMORANDUM OPINION

JAMES LAWRENCE KING, District Judge.

This case involves the fate of thousands of Haitians who are seeking an opportunity to present their claims for political asylum to the United States Immigration and Naturalization Service. It is now before the court on remand from the Fifth Circuit Court of Appeals, after a procedurally complex journey to the United States Supreme Court. In that august forum, the Solicitor General of the United States obtained a dismissal of the pending appeals upon the basis that the government intended to promulgate rules providing a full and fair evidentiary hearing for Haitian refugees. After a ten month hiatus, in which the government apparently labored valiantly to create such rules, their creation, the rules, are in their very enactment a denial of procedural fairness.

Stated another way, the Haitians have claimed that the way in which the Immigration and Naturalization Service ("INS") determined their political asylum claims was violative of the due process clause of the Fifth Amendment to the United States Constitution and Article 33 of the United National Convention and Protocol relating to the Status of Refugees ("Protocol").[1] This court previously upheld the claims of the refugees.[2] The issue now before the court is whether certain new regulations promulgated by the INS have rendered moot these claims. After carefully reviewing the record, this court has determined that the regulations in question were not promulgated in accordance with Section 4 of the Administrative Procedure Act.[3] As a consequence, the court further finds that the new regulations are null and void and this case is not moot.

## I. FACTUAL BACKGROUND

On April 4, 1974 Marie Sannon, and others initiated this case by filing a petition for a writ of habeas corpus.[4] In their petition the petitioners allege that they are nationals of Haiti who covertly fled their country because of a well-founded fear of political persecution. They further allege that if returned to Haiti they would be imprisoned and tortured, or even executed. Upon their arrival in the United States, the petitioners claimed political asylum pursuant to the Protocol. Based merely upon brief pro forma interviews conducted by officers of the INS, the claims for political asylum were denied by the District Director of the INS. The determinations of the District Director, in turn, were routinely approved by the Department of State. Subsequent to this rejection of their political asylum claims, the petitioners were brought before an Immigration Judge who determined that they were excludable aliens because they did not possess proper documents. In accord with this finding, the petitioners were ordered deported. Furthermore, the Immigration Judge specifically refused to consider the political asylum claims on the grounds that he had no jurisdiction to make such a determination.

In their habeas corpus petitions, the petitioners seek judicial review of these summary proceedings. The core of the petitioners' claim is that this procedure violates both Article 33 of the Protocol and the due process clause of the Fifth Amendment to the United States Constitution. They contend, with regard to the Protocol, that they

---

1. 19 U.S.T. 6223, T.I.A.S. 6557. Article 33 of the Protocol provides, in pertinent part:

    No Contracting State shall expel or return ("refouler") a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion.

2. *Sannon v. United States,* 427 F.Supp. 1270 (S.D.Fla.), *vacated and remanded,* 566 F.2d 104 (5th Cir. 1977).

3. 5 U.S.C. § 553 (1976).

4. On October 2, 1975, Ketley Jean-Baptiste, and others, filed a similar petition, and the two cases were consolidated.

are vested with a right to parole into this country if they are bona fide political refugees. They claim, therefore, that the right to parole entitles them to a full evidentiary hearing before an Immigration Judge prior to any determination of their status as political refugees. The petitioners, in this context, further contend that a full hearing means nothing less than the right to present evidence in their own behalf, confront all adverse evidence, cross-examine adverse witnesses, present legal and other arguments, be represented by counsel, and be provided with a statement of reasons for the denial of claims. The petitioners also allege that since deportable aliens are accorded the above mentioned rights, such disparity in the treatment of different categories of aliens deprives excludable aliens of the equal protection of the laws and violates the terms of the Protocol.

On February 5, 1977, this court rendered its decision regarding these contentions. The court held that under the terms of the Protocol, the Immigration Judge had acted improperly in his refusal to hear evidence regarding the political asylum claims of the petitioners. In addition, this court held that the disparity between the procedures used in determining the claims of deportable aliens and those used in determining the claims of excludable aliens was improper under the Protocol.[5] In accord with these findings, the cases were remanded to the INS, with explicit directions to provide "full, fair adversary hearings" in which the petitioners would be allowed to present evidence of their political refugee status before an Immigration Judge. The procedural history did not, however, end at this point. In order to understand the present posture of these cases, therefore, it is necessary to describe in detail the series of procedural events which occurred after the above decision of this court was rendered. It is to this journey that we turn next.

## II. PROCEDURAL HISTORY

On March 7, 1977, three weeks after the decision of this court, the United States Court of Appeals for the Fifth Circuit rendered its decision in *Pierre v. United States*.[6] *Pierre* similarly involved excludable Haitian aliens who claimed political asylum and requested parole into the United States pursuant to the Protocol. The petitioners in *Pierre,* just as the petitioners in this case, claimed that the INS procedures for determining the political asylum claims of excludable aliens were both constitutionally and statutorily inadequate. The Fifth Circuit, however, unlike this court, rejected the petitioners' claims. The court held that the determination of political refugee status is a matter of discretion to be exercised by INS officials. In addition, the court held that excludable aliens neither enjoy the protection of the United States Constitution, nor are they vested with any substantive rights by the Protocol. The INS procedures for determining political asylum claims were therefore found to be valid. The court further found that any such determination was reviewable by a federal district court only for an abuse of discretion.

Subsequent to the decision of the Fifth Circuit in *Pierre,* the government filed a notice of appeal from the decision of this court in *Sannon.* During the pendency of the appeal in *Sannon,* the *Pierre* petitioners filed a petition for a writ of certiorari in the Supreme Court of the United States.

The next procedurally significant event occurred in November, 1977. At that time, the government responded to the petition for a writ of certiorari by filing a memorandum suggesting that both the *Pierre* and *Sannon* cases had become moot. In the memorandum, the government stated that the INS was

present his asylum application to an Im-

5. In view of this disposition, the constitutional claims of the petitioners were not reached.

6. 547 F.2d 1281 (5th Cir. 1977), *vacated and remanded* 434 U.S. 962, 98 S.Ct. 498, 54 L.Ed.2d 447 (1977).

migration Judge in the course of an exclusion hearing. . . .

The new procedures . . . will afford petitioners a hearing on their asylum claims before an immigration judge, which is the relief they seek in this case.[7] Based upon this representation, the Supreme Court granted the writ of certiorari on November 28, 1977.[8] The judgment of the Fifth Circuit in *Pierre* was vacated, and the case was remanded to the Fifth Circuit to consider the question of mootness.

On January 5, 1978, the Fifth Circuit vacated the opinion of this court in *Sannon* and remanded the case to this court for consideration in light of *Pierre*.[9] Thereafter, on April 18, 1978, the Fifth Circuit remanded *Pierre* to the district court to consider the question of mootness. No further activity occurred until the commencement of the present series of hearings.

## III. PRESENT POSTURE OF THE CASE

As a result of the above proceedings, and in view of the fact that there had been no activity in the *Sannon* case since it was remanded by the Fifth Circuit, this court set the case for a status conference to be held on September 8, 1978. At that hearing, counsel for both the United States and Marie Sannon agreed with the court that under the terms of the remand, the role of this court was to determine mootness in light of the promised INS regulations. During the course of this hearing, the petitioners informed the court that although the promised regulations had not yet been promulgated by the INS, exclusion hearings had been scheduled at the rate of thirty hearings per day commencing September 11, 1978. Upon the motion of the petitioners, the court entered a stay which prohibited these hearings until regulations were promulgated by the INS and the court had an opportunity to review those regulations to determine mootness.

On September 13, 1978, the new INS regulations regarding the conduct of exclusion hearings were published in the Federal Register.[10] According to this publication, these regulations became effective immediately. On the day following publication, September 14, 1978, the government filed a motion to vacate the stay order. The petitioners subsequently filed a cross-motion to continue the stay order.

As the result of these motions, a hearing was held on September 19, 1978, to determine the effect of the newly promulgated regulations upon the status of this case. The petitioners argued that the regulations were not promulgated in accordance with Section 4 of the Administrative Procedure Act. ("A.P.A."),[11] and were therefore null and void. Specifically, they contended that

---

**7.** Memorandum Suggesting Mootness at 2–3. In subsequent hearings before this court, which are discussed in more detail, *infra,* the government has taken the position that this court's order in *Sannon* is correct, and that the INS has endeavored to follow this order in promulgating its new regulations.

**8.** 98 S.Ct. 498 (1977).

**9.** 566 F.2d 104 (5th Cir. 1977).

**10.** 43 Fed.Reg. 40801 (1978). These regulations are attached to this opinion as Appendix 1.

At the same time that these exclusion hearing regulations were published, the INS also published proposed regulations regarding the presentation of political asylum claims at deportation hearings. 43 Fed.Reg. 40879 (1978). These latter proposed regulations are attached as Appendix 2. The public has been allowed sixty days, until November 13, 1978, within which to submit comments regarding these reg-

ulations, after which the final regulations will be published and are to become effective thirty days thereafter.

**11.** 5 U.S.C. § 553 (1976). *This section provides:*

§ 553 Rule making

(a) This section applies, accordingly to the provisions thereof, except to the extent that there is involved—

(1) a military or foreign affairs function of the United States; or

(2) a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts.

(b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—

(1) a statement of the time, place, and nature of public rule making proceedings;

the INS failed to provide the notice of proposed rule making and the opportunity for public comment that is required under Section 4(a)–(b) of the A.P.A.[12] In addition, the petitioners contended that the INS violated Section 4(c) of the A.P.A.[13] by failing to delay the effective date of the final rule for thirty days after its publication in the Federal Register.

The government responded to these contentions by asserting that the regulations in question are exempt from both the notice and comment provisions and the delayed effective date provision because they relate to service procedure and confer benefits upon the persons affected thereby. In a supplemental memorandum of law, filed after the hearing, the government expanded upon and clarified its claim of exemption. The first government claim is that the reg-

ulations are exempt from all of the provisions in question as "rules of procedure, interpretative rules and statements of policy."[14] In addition, the government contends that the regulations are exempt from the delayed effective date provision because "the service made a specific finding, as published with the regulations, of good cause that a delayed effective date was unnecessary because the amendments confer benefits on the persons affected thereby."[15]

With this somewhat complex background in mind, the court now turns to an analysis of the applicable law under the A.P.A.[16]

## IV. THE ADMINISTRATIVE PROCEDURE ACT

The determinative issues in this case are (1) whether the INS is required by Section

---

(2) reference to the legal authority under which the rule is proposed; and

(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

Except when notice or hearing is required by statute, this subsection does not apply—

(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

(B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. When rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title apply instead of this subsection.

(d) The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except—

(1) a substantive rule which grants or recognizes an exemption or relieves a restriction;

(2) interpretative rules and statements of policy; or

(3) as otherwise provided by the agency for good cause found and published with the rule.

(e) Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule.

**12.** 5 U.S.C. § 553(b)–(c) (1976).

**13.** 5 U.S.C. § 553(d) (1976).

**14.** Memorandum of Law In Support of Government's Position That The Amendments To 8 C.F.R., Parts 108 and 236, Issued By The Immigration and Naturalization Service and Published In The Federal Register On September 13, 1978, Were Properly Promulgated and Effective Immediately at 3.

**15.** *Id.*

**16.** At the hearing of September 19th, the parties also argued the substantive merits of the mootness issue. The petitioners claimed that the INS regulations do not render this case moot. Specifically, the petitioners contended that the time limitation imposed upon aliens seeking to claim asylum and the summary judgment procedure that may in some circumstances be utilized by the Immigration Judge results in the perpetuation of the denial by the INS of the petitioners' right to a full and fair evidentiary hearing. The government took a contrary position. In view of the disposition of this case, the court does not decide now whether the regulations, if properly enacted, would render moot the petitioners' claims. Since the INS will be afforded the opportunity to carefully scrutinize any objections to its regulations, and change the regulations in accordance with these objections, the court finds that a present review of the ineffective regulations would be premature.

4(a)–(b) of the A.P.A.[17] to give the public notice and opportunity to comment prior to enacting regulations which give effect to the substantive right of excludable aliens to political asylum; and (2) whether the INS is required by Section 4(c) of the A.P.A.[18] to delay the effective date of the final regulation for thirty days after its publication in the Federal Register. Although these issues are interrelated, and therefore some of the same factors enter into both determinations, each issue will be discussed separately to facilitate the clarity of this opinion.

## A. *Notice and the Opportunity to Comment*

### 1. A Glimpse of the Law

The law which governs the right of the public to be provided with notice of an administrative agency's proposed rule making and with an opportunity to express its views in a meaningful way regarding the proposed rule is found in Section 4 of the A.P.A.[19] This section, which is entitled "Rule making," provides, in pertinent part:

(a) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—

(1) a statement of the time, place, and nature of public rule making proceedings;

(2) reference to the legal authority under which the rule is proposed; and

(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

Except when notice or hearing is required by statute, this subsection does not apply—

(A) to interpretative rules, general statements of policy, or rules agency organization, procedure or practice

. . .

(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose.

The United States claims that the regulations in question are exempt under Section 4(a)(A) [20] since they are "rules of procedure, interpretative rules and statements of policy." Although the only exemption from this subsection which was claimed by the INS in the published regulation was that this was a matter agency procedure, this court has considered, and for the reasons discussed below, rejected, all three of the exemptions now claimed by the government.

To begin, it is most important to note that in order to adequately determine the validity of the government's arguments, the exemptions to the notice and comment requirements of the A.P.A. must be analyzed in terms of their underlying purposes. During the Senate hearings prior to the enactment of the A.P.A., Senator McCarran, the chairman of the Senate Judiciary Committee, discussed these purposes. He stated that the notice and comment provisions were:

[d]esigned to provide that . . . the legislative functions in administrative agencies shall, so far as possible, be exercised upon some form of public participation after notice. . . . The effect of this provision will be to enable parties to express themselves in some informal manner prior to the issuance of rules and regulations, so that they will have been consulted before being faced with the accomplished fact of a regulation which they may have not anticipated or with

---

**17.** 5 U.S.C. § 553(b)–(c) (1976).

**18.** 5 U.S.C. § 553(d) (1976).

**19.** 5 U.S.C. § 553 (1976).

**20.** 5 U.S.C. § 553(b)(A) (1976).

reference to which they have not been consulted. This provision will make for good public relations on the part of administrative agencies. Wisely used and faithfully executed as it must be, it should be of great aid to administrative agencies by affording them a simple statutory means of apprising the public of what they intend to do and affording the interested public a non-burdensome method of presenting its side of the case.[21]

In a similar vein, Professor Bonfield has stressed the practical importance of such provisions in terms of the underlying theoretical ideal of participatory democracy upon which this nation is founded. He states, and this court agrees:

If we assure interested parties an opportunity to influence the decisionmakers by communicating with them, public involvement in the rule making process will expand, making the process more representative. Public participation in rule making may be particularly helpful when an agency promulgates an unpopular rule. Dissenters may be less likely to sabotage a rule in an active way, if they have had an adequate opportunity to present their objections prior to its promulgation. Moreover, the failure of officials to secure views from the relevant public before regulations are issued may result in a lack of administrative preparation for certain problems that could arise from those rules' application, or the community's reaction to them.[22]

Thus, in order to effectuate these purposes, agencies are not permitted to promulgate regulations in their unfettered discretion, but rather, must take account of the views of the interested public.[23]

In addition, any exemptions from the requirements of public participation result from the realization of Congress that in certain circumstances, such as where the agency is seeking to regulate only its internal organization and "housekeeping" functions, such requirements are unnecessary, and even detrimental. Therefore, as the Senate Report on the A.P.A. states, these provisions do not apply "to rules other than those of substance [and] . . . agencies are given discretion to dispense with notice in the case of interpretative rules, general statements of policy, or rules of agency organization, procedure or practice."[24]

In light of this background, the courts have developed the "substantial impact" test to determine whether a particular regulation is exempt from the notice and comment provisions.[25] Under this test, the notion that the applicability of Section 4 is governed by the formal distinction that may exist between substantive rules and rules of procedure, policy or interpretation, etc., has been rejected. Rather, the crucial factor in this determination is the actual effect and impact of the regulation in question on the public. If the regulation alters the rights or the obligations of the persons affected, then the agency must utilize the notice and comment procedure.

In the case at bar, therefore, it is both unnecessary and less than helpful to determine whether or not the INS regulations are technically rules of procedure or inter-

---

**21.** Sen.Doc.No.248, 79th Cong., 2d Sess. 358–59 (1946).

**22.** Bonfield, Public Participation in Federal Rulemaking Relating to Public Property, Loans, Grants, Benefits, or Contracts, 118 U.Pa.L.Rev. 540, 541 (1970).

**23.** *See Home Box Office, Inc. v. FCC*, 182 U.S. App.D.C. 142, 167–69, 567 F.2d 9, 34–36 (1977). *See generally* Wright, The Courts and the Rulemaking Process: The Limits of Judicial Review, 59 Cornell L.Rev. 375 (1974).

**24.** Sen.Doc.No.248, 79th Cong., 2d Sess. 200 (1946).

**25.** *See, e. g., Reynolds Metals Co. v. Rumsfeld*, 564 F.2d 663, 669 (4th Cir. 1977), *cert. denied*, 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 84 (1978); *Pickus v. United States Board of Parole*, 165 U.S.App.D.C. 284, 289, 507 F.2d 1107, 1112 (1974); *Lewis-Mota v. Secretary of Labor*, 469 F.2d 478, 481 (2d Cir. 1972); *Texaco, Inc. v. FPC*, 412 F.2d 740, 744 (3d Cir. 1969); *National Motor Freight Traffic Association, Inc. v. United States*, 268 F.Supp. 90, 96 (D.D.C.1967), *aff'd mem.*, 393 U.S. 18, 89 S.Ct. 49, 21 L.Ed.2d 19 (1968).

pretative rules or statements of policy. Instead, this court looks to the way in which the regulations affect the public. It is to this point that we now turn.

### 2. The Regulations at Issue

Prior to the issuance of the new regulations, an excludable alien who claimed political asylum presented his claim by submitting a written application to the District Director of the INS. The District Director then approved or denied the claim in the exercise of his discretion, without any opportunity for an adversary evidentiary hearing. This decision was a final administrative decision and could not be reviewed at the subsequent exclusion hearing which was held before an immigration judge.[26]

In the face of claims by the petitioners that this procedure was violative of both the due process clause of the United States Constitution and Article 33 of the Protocol, the INS promulgated certain new regulations. The purpose and rationale of the new regulations was published in the Federal Register:

> In order to give alien asylum applicants the fullest possible opportunity to present their claims, the service will change its policy and revise its procedures in order to provide [excludable] aliens . . . an evidentiary hearing on their asylum claim before an immigration judge in exclusion proceedings.[27]

The regulations specify in detail the nature of the evidentiary hearing that is now afforded excludable aliens, including the petitioners in the case at bar. A close examination of these regulations reveals their complex nature and effect upon the public. Under proposed 8 C.F.R. § 236.3, an application for asylum may be made on Form I–589 prior to the commencement of an exclusion hearing. If no application has been made prior to the hearing, "the hearing may be adjourned for not more than ten days to allow an application to be filed."[28] After the application is filed, two copies are sent to the Office of Refugees and Migration Affairs of the Bureau of Human Rights and Humanitarian Affairs of the Department of State. The Department of State is then granted thirty days within which to examine the documents and express its views.[29] At the expiration of the thirty day time period, an exclusion hearing is held before an immigration judge. The previous role of the District Director in determining such claims has been completely abolished. The regulations provide that at this hearing:

> The applicant shall be examined under oath on his application and may present evidence on his behalf. The applicant has the burden of satisfying the Immigration Judge that he would be subject to persecution . . . as claimed. The Trial Attorney may also present evidence for the record, and may submit [classified] information not of the record to be considered by the Immigration Judge. . . .
> When the Immigration Judge receives such non-record information he shall inform him whether it concerns conditions generally in a specified country or the applicant himself. Whenever he believes he can do so consistently with safeguarding both the information and its source, the Immigration Judge should state more specifically the general nature of the information in order that the applicant may have an opportunity to offer opposing evidence. A decision based in whole or in part on such classified information shall state that such information is material to the decision.[30]

In certain cases, however, the excludable aliens may not be afforded the full benefits of this procedure since the INS has also promulgated regulations concerning an al-

---

**26.** This procedure is described in detail in *Pierre, supra,* and *Sannon, supra.*

**27.** 43 Fed.Reg. 40802 (1978).

**28.** 8 C.F.R. § 236.3(a)(1) (proposed) 43 Fed. Reg. 10802 (1978).

**29.** 8 C.F.R. § 236.3(a)(2) (proposed) 43 Fed. Reg. 10802 (1978).

**30.** 8 C.F.R. § 236.3(a)(3) (proposed) 43 Fed. Reg. 10802 (1978).

ternative procedure that may be used. This alternative is a summary judgment procedure. Under this procedure, either side can file a motion for summary judgment, after which the opposing side is given ten days to respond. Based only upon the motion and response, the immigration judge decides whether summary judgment is appropriate and, if so, for whom it should be granted. This differs significantly from the hearing procedure in three respects. First, the Department of State is given no opportunity to review the application and express its views. Second, the immigration judge is not required to make any statements regarding the existence or utilization of any non-record classified information. Finally, the applicant is denied the right to cross-examine any adverse witnesses. The petitioners have claimed that even if the full hearing procedure is deemed sufficient under the Constitution and the Protocol, this summary judgment procedure is insufficient, and thus the new regulations do not satisfy their claims for relief.[31]

This court does not now decide whether either or both of these procedures comport with the requirements of the Protocol and the United States Constitution. Rather, the purpose of the above description of the alternative procedures is to demonstrate the radical departure of the new rules from both the previous substantive viewpoint of the INS that political asylum is a matter of discretion to be exercised by the Department of Justice, and the previous procedures utilized to determine asylum claims. It provides asylum applicants with a panoply of rights heretofore denied by the INS. Although it is true, as the government con-

tends, that the mere fact that a procedural rule affects substantive rights does not make that rule a substantive one, where, as here, the regulations go directly to the heart of the substantive claims, substance and procedure are so intertwined as to be inseparable. These regulations clearly do not fall within the category of routine "housekeeping" regulations which Congress intended to exempt from the notice and comment provisions of the A.P.A.[32]

More importantly, in this case, strict adherence to at least the minimum notice and comment procedural requirements is particularly significant. Here, one of the main purposes of promulgating these regulations was to implement the prior decision of this court regarding the statutorily mandated rights of political asylum applicants to present their claims, and to thereby moot the claims of the petitioners in this case and the *Pierre* case. Thus when these regulations were promulgated, the INS knew both of the substantial interest of the petitioners and others similarly situated, and that the regulations were going to be subjected to immediate review by this court for a determination of mootness. In view of this knowledge, the compilation of an administrative rule making record should have been performed scrupulously. This court considers the information that such a record would reflect crucially important to the determination of the mootness issue. Indeed, the agency should have given serious consideration to whether this situation is one of those rare circumstances where it is required to go beyond the minimum rule making procedures required by the statute and employ formal rule making procedures.[33]

31. The court notes that despite the claim of the government that "the asylum procedures for the deportable and excludable aliens are now substantially identical," there is no counterpart to this summary judgment procedure in either the former or the proposed regulations which relate to the claims of deportable aliens. Memorandum In Support of Defendant's Motion To Reconsider and To Vacate the Order Enjoining the Holding of Exclusion Proceedings at 3.

32. *Anderson v. Butz,* 428 F.Supp. 245 (E.D.Cal. 1975), *aff'd* 550 F.2d 459 (9th Cir. 1977).

33. *See Vermont Yankee Nuclear Power Corporation v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978). *See generally* Davis, 1 Administrative Law Treatise § 6:19, :32 (2d ed. 1978).

In rejecting the INS determination that the notice and comment procedures do not apply, it is also important to note that on the same day that the INS published the final regulations concerning asylum claims of excludable aliens, it also published proposed regulations concerning a change in the procedure for determining asylum claims of deportable aliens. 43 Fed.

■ In sum, this court rejects the contention of the government that these regulations are exempt from the notice and comment requirements as rules of procedure, interpretative rules and statements of policy. Since this defect in promulgation renders the regulations null and void, the court is not required to go further. However, the court feels that in the interest of judicial and administrative economy it is also appropriate to discuss the second alleged defect in the manner of promulgation. This defect is the failure to provide a delayed effective date after the publication of the final rule, as required by Section 4(c) of the A.P.A.[34]

### B. *The Delayed Effective Date Provision*

Under Section 3 of the A.P.A.[35] each agency is required to publish in the Federal Register "substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency."

Under Section 4(c) of the A.P.A.[36] such rules, with certain exception, must be published at least thirty days prior to their effective date. There is no dispute that the regulations in question fall within the category of rules required to be published, nor is there any dispute that they were not published prior to their effective date. The United States, however, contends that these regulations fall within two of the exceptions specified by the statute: (1) that the rules are interpretative rules and statements of policy; and (2) that the agency found good cause not to delay the effective date because they confer benefits on the persons affected. For the reasons discussed blow, the court rejects these claimed exceptions.

The purpose of the delayed effective date provision is two-fold. First, it affords "persons affected a reasonable time to prepare for the effective date of a rule or rules or to take any other action which the issuance of the rules may prompt." [37] In addition, it gives the agency another opportunity to discover and correct mistakes or inadvertencies.[38] Thus, the purposes behind the delayed effective date provision are slightly different than those which support the notice and comment provisions, and regulations which are exempt from the latter are not necessarily exempt from the former.[39]

In this case, however, the court finds that substantially the same reasons that require notice and opportunity to comment also require the delayed effective date. The first exception that the government seeks to apply is that the regulations are classified as statements of policy or interpretative rules. For the same reasons that this classification did not survive scrutiny under the notice and comment provisions, it is also inapplicable under the delayed effective date provision. The substantial impact which this

Reg. 40879 (1978). The public was given a period of sixty days within which to comment upon these latter regulations, at the end of which the final rule will be published to be effective thirty days thereafter. It is true, as the government contends, that these regulations do not directly affect the petitioners in the case at bar. However, since one of the claims of the petitioners involves the disparity of treatment between deportable and excludable aliens, and since the government contends that the joint effect of the new regulations is to equalize the treatment, it is difficult to understand the logic behind the INS decision to provide that one set of regulations is effective ninety days before the other, and that one set of regulations is final and the other is subject to alteration. Along the same lines, it appears to this court that in order to determine the mootness issue completely, an examination of both regulations is required. This cannot be done until both regulations are at least published in final form.

34. 5 U.S.C. § 553(d) (1976).

35. 5 U.S.C. § 552(a)(1)(D) (1976).

36. 5 U.S.C. § 553(d) (1976).

37. Sen.Doc.No.248, 79th Cong., 2d Sess. 201 (1946).

38. *See* Auerbach, Informal Rulemaking: A Proposed Relationship Between Administrative Procedures and Judicial Review 72 Nw.L.Rev. 15, 18 (1977).

39. Sen.Doc.No.248, 79th Cong., 2d Sess. 200–201 (1946).

regulation has upon excludable aliens precludes this exception.

The second avenue by which the government seeks to escape the requirement of the delayed effective date is the good cause exception. The basis for finding good cause is that the regulations confer a benefit on those persons affected.

At the outset, this court notes that the good cause exception has been construed strictly by the courts.[40] Thus, this exception is typically applicable only in emergency situations or where an interim rule is necessary prior to the completion of more formal rule making procedures.[41]

■ In this case, there has been no attempt to show that this is an emergency situation or that either the agency or the public would be prejudiced by a delayed effective date. Indeed, it would be particularly difficult for the INS to make such a claim in view of the fact that ten months elapsed between the time the Solicitor General of the United States suggested mootness to the United States Supreme Court because the government was going to promulgate these regulations and the date the INS actually published the rules. The only reason to support the claim of good cause is that the regulations confer benefits. In the absence of other factors, this court refuses to hold that this is sufficient. Where the INS spent ten months promulgating a complex regulatory scheme for determining the process by which excludable aliens will be afforded their right to claim political asylum, the affected public is entitled to a thirty day period of time within which to study and prepare for the implementation of this scheme. The failure to provide for this time period renders the regulations null and void.

## V. CONCLUSION

■ In summary, this court holds that the manner in which the INS promulgated the regulations in question was violative of the Administrative Procedure Act since there was neither notice of proposed rule making nor opportunity to comment provided to the public, and the effective date of the final rule was not delayed for thirty days after publication. These defects in the manner of promulgation render the regulations null and void. Therefore, the stay order which was entered in open court on September 8, 1978, is continued in full force and effect until such time as new regulations are properly promulgated, and this court has the opportunity to review them to determine mootness in accordance with the mandate of the United States Court of Appeals for the Fifth Circuit.

DONE AND ORDERED in chambers in Miami, Florida, this 11 day of October, 1978.

Appendix 1 to follow.

**40.** *United States v. Gavrilovic,* 551 F.2d 1099 (8th Cir. 1977); *Texaco, Inc. v. FPC,* 412 F.2d 740 (3d Cir. 1969).

**41.** *See, e. g., Nader v. Sawhill,* 514 F.2d 1064 (Em.App.1975); *Clay Broadcasting Corp. of Texas v. United States,* 464 F.2d 1313, 1319 (5th Cir. 1972), *rev'd on other grounds sub nom., NCTA, Inc. v. United States,* 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974); *Buckeye Cablevision, Inc. v. United States,* 438 F.2d 948 (6th Cir. 1971); *Meredith Broadcasting Co. v. FCC,* 124 U.S.App.D.C. 379, 365 F.2d 912 (1966). Although some of the above cited cases involve the existence of good cause in the context of the notice and comment requirements, they are applicable here, too, since the same basic standards are used for this determination. Davis, 1 Administrative Law Treatise § 6:29 at 590 (2d ed. 1978).

APPENDIX 1

**[4410-01]**

**Title 8—Aliens and Nationality**

**CHAPTER ⫫—IMMIGRATION AND NATURALIZATION SERVICE, DEPARTMENT OF JUSTICE**

**PART 108—ASYLUM**

**PART 236—EXCLUSION OF ALIENS**

**Asylum: Filing of Application in Exclusion Proceedings**

AGENCY: Immigration and Naturalization Service, Justice.

ACTION: Final rule.

SUMMARY: This final rule contains amendments of the regulations of the Immigration and Naturalization Service pertaining to applications for asylum submitted by aliens seeking to enter the United States at airports or seaports of entry. Existing Service regulations provide that asylum applications by those seeking to enter the United States must be filed with and adjudicated by a District Director. In order to give alien asylum applicants the fullest possible opportunity to present their claims, the Service will change its policy and revise its procedures in order to provide aliens who apply for asylum at airports or seaports of entry an evidentiary hearing on their asylum claim before an immigration judge in exclusion proceedings. Any person under a pending order of exclusion and deportation who prior to November 1, 1977, has submitted an application for asylum which was denied by a District Director, or is pending but has not been previously considered by an immigration judge, may, prior to December 31, 1978, submit a motion to reopen the exclusion proceedings to have the asylum application decided by an immigration judge under the new procedures. In the future, only those applicants for admission, who, because they are stowaways, crewmen, or temporarily excluded on national security grounds, are not entitled to an exclusion hearing, will submit their asylum applications to the District Director. These rules are being published to give effect to the Service's new policy. A Notice of Proposed Rulemaking, also published

today, sets forth the Service's proposal to eliminate the District Director's role in processing asylum claims by aliens already in the United States in an unlawful status.

EFFECTIVE DATE: September 13, 1978.

FOR FURTHER INFORMATION CONTACT:

James G. Hoofnagle, Jr., Instructions Officer, Immigration and Naturalization Service, 425 I Street NW., Washington, D.C. 20536, telephone 202-376-8373.

Chapter I of Title 8 of the Code of Federal Regulations is hereby amended as follows:

1. 8 CFR 108.1 is revised by adding a new second sentence between the existing first and second sentences; amending the existing second sentence; and adding three new sentences between the revised second, and existing third, sentences. As revised 8 CFR 108.1 reads as follows:

**§ 108.1  Application.**

An applicant who is seeking admission to the United States at a land border port or preclearance station who wishes to apply for asylum shall be referred to the nearest American consul. In all other cases, application for asylum shall be submitted on Form I-589, "Request for Asylum in the United States." Except as otherwise provided in this paragraph, an application for asylum by an alien who is applying for admission to the United States at an airport or seaport for entry shall be submitted to the docket clerk for the immigration judge who shall consider that application in connection with an exclusion hearing as provided in § 236.3 of this chapter. A crewman or stowaway or alien temporarily excluded pursuant to section 235(c) of the act who is at a seaport or airport shall submit his application for asylum to the district director. An application for asylum by an alien who is within the United States and who is not under deportation proceedings shall be submitted to the district director having jurisdiction over his place of residence in the United States. The applicant's spouse and unmarried children under the age of 18 years may be included in the application.

2. Section 108.2 is amended by revising the title to read as follows:

§ 108.2   Decision by District Director.

\*      \*      \*      \*      \*

3. 8 CFR 236 is amended by adding a new § 236.3. The third sentence of § 236.6 is amended. The first sentence of § 236.7(c) is amended. The amendments are set forth below.

§ 236.3   Application for asylum.

(a) *Applications on and after November 1, 1977.* (1) An alien subject to exclusion proceedings under this part who believes that he would be subject to persecution in the country to which he would be returned under an order of exclusion and deportation because of race, religion, nationality, membership in a particular social group, or political opinion may apply for asylum on Form I–589. Four copies of such application shall be submitted to the docket clerk before an exclusion hearing is commenced. If application has not been made prior to commencement of the hearing, the hearing may be adjourned for not more than ten days to allow an application to be filed.

(2) Form I–589 may be accompanied by a motion for summary judgment. Within 10 days after the filing of Form I–589, the Service may file and serve on the alien a motion for summary judgment or a reply to any such motion by the alien. Within 10 days of service the alien may file a response to the Service's motion or reply. The grant of a motion for summary judgment shall be subject to appeal as provided in § 236.7 If the immigration judge denies such motion, or if no such motion has been filed within ten days after filing of the Form I–589, the docket clerk shall send two copies of Form I–589 with supporting evidence to the Office of Refugee and Migration Affairs of the Bureau of Human Rights and Humanitarian Affairs of the Department of State, and shall calendar the case for hearing, which shall be deferred for a period not to exceed 30 days pending receipt of the Department of State's views. The reply, if any, from the Department of State, unless classified under Executive Order No. 11652 (37 FR 5209, March 19, 1972), as requiring protection from unauthorized disclosure in the interest of national securi-

ty shall be given by the docket clerk to the alien and to the trial attorney.

(3) During the exclusion hearing, the applicant shall be examined under oath on his application and may present evidence on his behalf. The applicant has the burden of satisfying the Immigration Judge that he would be subject to persecution on account of race, religion, nationality, membership in a particular social group, or political opinion as claimed. The Trial Attorney may also present evidence for the record, and may submit information not of record to be considered by the Immigration Judge provided that such information is classified under Executive Order No. 11652 and that the Immigration Judge or the Board has determined that such information is relevant. When the Immigration Judge receives such nonrecord information he shall inform the applicant thereof and shall also inform him whether it concerns conditions generally in a specified country or the applicant himself. Whenever he believes he can do so consistently with safeguarding both the information and its source, the Immigration Judge should state more specifically the general nature of the information in order that the applicant may have an opportunity to offer opposing evidence. A decision based in whole or in part on such classified information shall state that such information is material to the decision. An alien seeking admission to the United States at a land border port will be processed in accordance with the provisions of § 108.1 of this chapter.

(b) *Applications prior to November 1, 1977.* Any person under a pending order of exclusion and deportation who prior to November 1, 1977, has submitted an application for asylum which was denied by a district director but was not considered by an Immigration Judge may, prior to December 31, 1978, submit a motion to reopen the exclusion proceedings, without fee, to have such application decided by an Immigration Judge in accordance with paragraph (a).

§ 236.6   Finality of order.

\* \* \* When the order of the Immigration Judge is to admit the applicant, or to grant asylum by parole under section 212(d)(5) of the Immi-

gration and Nationality Act, or to grant the application for adjustment under the conditions specified in § 245.2(a) of this chapter, the Immigration Judge shall place the applicant on notice that the decision is subject to appeal by the district director as provided in § 236.7(c).

§ 236.7   Appeals.

(a) * * *

(b) * * *

(c) *By district director.* The district director may, within five days from date of decision, appeal from an order of the Immigration Judge to admit the applicant, or to grant asylum, or to grant the application for adjustment. * * *

\*      \*      \*      \*      \*

(Sec. 103; 8 U.S.C. 1103; Interpret or apply sec. 212(d)(5) and sec. 236 (8 U.S.C. 1182(d)(5) and 1226))

The amendments contained in this order are issued pursuant to section 552 of Title 5 of the United States Code (80 Stat. 383), as amended by Pub. L. 93-502 (88 Stat. 1561) and the authority contained in section 103 of the Immigration and Nationality Act (8 U.S.C. 1103) 28 CFR 0.105(b) and 8 CFR 2.1. Compliance with the provisions of section 553 of Title 5 of the United States Code as to notice of proposed rulemaking and delayed effective date is unnecessary in this instance because the amendments relate to Service procedure and confer benefits on the persons affected thereby.

Effective date: The amendments contained in this order become effective on September 13, 1978.

Dated: September 8, 1978.

LEONEL J. CASTILLO,
*Commissioner of
Immigration and Naturalization.*

[FR Doc. 78-25890 Filed 9-12-78; 8:45 am]

## APPENDIX 2

[4410-01]

### DEPARTMENT OF JUSTICE

#### Immigration and Naturalization Service

[8 CFR Part 108]

#### FILING OF ASYLUM REQUESTS AFTER COMMENCEMENT OR COMPLETION OF DEPORTATION PROCEEDINGS

#### Proposed Rule

AGENCY: Immigration and Naturalization Service, Justice.

ACTION: Proposed Rule.

SUMMARY: The Immigration and Naturalization Service proposes new procedures to be followed by aliens when filing claims for asylum after commencement or completion of deportation proceedings. These new procedures are designed to eliminate duplications of proceedings and to allow for a more efficient and expedious determination of alien's rights.

DATE: Representations must be received on or before November 13, 1978.

ADDRESS: Please submit written representations in duplicate to the Commissioner of Immigration and Naturalization, Room 7100, 425 I Street NW., Washington, D.C. 20536.

FOR FURTHER INFORMATION CONTACT:

James G. Hoofnagle, Jr., Instructions Officer, Immigration and Naturalization Service, 425 I Street NW., Washington, D.C. 20536, telephone 202-376-8373.

SUPPLEMENTARY INFORMATION: This is a proposal to amend the regulations of the Immigration and Naturalization Service to provide that a request for asylum made by an alien after the commencement of deportation proceedings shall be considered by the immigration judge as a request for the withholding of deportation under section 243(h) of the Immigration and Nationality Act and the benefits of articles 32 and 33 of the Convention Relating to the Status of Refugees. The proposal will also provide that a request for asylum made follow-

ing the completion of a hearing shall be considered as a motion to reopen the deportation proceedings in order to submit a request for the withholding of deportation under section 243(h) of the act and for the benefits of articles 32 and 33 of the Convention Relating to the Status of Refugees. These will be the exclusive procedures for an alien who is within the United States unlawfully to raise his claim for asylum. Aliens maintaining lawful status in the United States or whose presence in the United States has been authorized by the Service may continue to submit their asylum applications to the District Director for adjudications.

Under current Service regulations, an alien within the United States and not under deportation proceedings may apply to a district director for asylum. If this request is denied, he may renew his application in a deportation proceeding before an immigration judge in the form of an application for withholding of deportation under section 243(h) of the act.

Under the present Service instructions, deportation proceedings must be stopped if a request for asylum is made, so the claim may be considered by the district director. Should the district director deny that request, the claims may be raised again in deportation proceedings.

The foregoing procedures are a duplication of effort and result in the application being adjudicated twice on the same facts. It delays the proceedings and the resolution of the asylum claim. This works to the detriment of the alien because his status remains in doubt and to the detriment of the Service which is unable to resolve the proceedings within a reasonable length of time. Similarly, after the hearing has been completed, an alien may raise an asylum claim which must then be considered by the district director. This also results in duplication of proceedings. In order to eliminate duplication of proceedings, and allow for a more efficient and expeditious determination of the alien's rights, the Service proposes the amendments to chapter I of title 8 of the Code of Federal Regulations set forth below.

1. It is proposed to amend 8 CFR 108.1 to read as follows:

§ 108.1   Application.

An applicant who is seeking admission to the United States at a land border port or preclearance station who wishes to apply for asylum shall be referred to the nearest American consul. In all other cases, application for asylum shall be submitted on form I-589, "Request for Asylum in the United States." Except as otherwise provided in this paragraph, an application for asylum by an alien who is applying for admission to the United States at an airport or seaport of entry shall be submitted to the docket clerk for the immigration judge who shall consider that application in connection with an exclusion hearing as provided in § 236.3 of this chapter. A crewman or stowaway or alien temporarily excluded pursuant to section 235(c) of the act who is at a seaport or airport shall submit his application for asylum to the district director. An application for asylum by an alien who is within the United States and who is maintaining a lawful status or whose presence in the United States has been authorized by the Service may be submitted to the district director having jurisdiction over his place of residence in the United States. For other aliens within the United States, the sole method for applying for asylum shall be through an application for withholding of deportation under section 243(h) of the act submitted in accordance with § 108.3 and § 242.17(c) of this chapter. The applicant's spouse and unmarried children under the age of 18 years may be included in the application.

2. It is proposed to amend 8 CFR 108 by adding a new § 108.3 to read as follows:

§ 108.3   Asylum requests after commencement or completion of deportation proceedings.

(a) *Asylum requests after proceedings have been commenced.* A request for asylum introduced by an alien or his representative after commencement of deportation proceedings shall be considered as a request for withholding of deportation under section 243(h) of the act and for the benefits of articles 32 and 33 of the Convention Relating to the Status of Refugees. See § 242.17(c) of this chapter for process-

ing instructions for section 243(h) applications.

(b) *Asylum requests after completion of deportation hearing.* A request for asylum by an alien or his representative following completion of a deportation hearing shall be considered as a motion to reopen the hearing pursuant to § 103.5 or § 242.22 of this chapter to submit a request for withholding of deportation under section 243(h) of the act and for the benefits of articles 32 and 33 of the Convention Relating to the Status of Refugees and considered in accordance with § 242.17(c) of this chapter.

(Sec. 103; 8 U.S.C. 1103)

PUBLIC COMMENTS INVITED

In accordance with 5 U.S.C. 553 the Service invites representations of interested parties on this proposed rule. All relevant data, views, or arguments submitted on or before November 13, 1978, will be considered. Representations should be submitted in writing, in duplicate, to the Commissioner of Immigration and Naturalization at the address shown at the beginning of this notice.

Dated: September 8, 1978.

LEONEL J. CASTILLO,
*Commissioner of Immigration
and Naturalization.*