**STATE of ALABAMA ex rel.**

**William J. BAXLEY, Attorney General, Plaintiff-Appellant,**

v.

**Arthur D. WOODY, etc., et al., Defendants-Appellees.**

No. 72–2257.

United States Court of Appeals, Fifth Circuit.

Jan. 29, 1973.

William J. Baxley, Atty. Gen., Gordon Madison, Asst. Atty. Gen., Montgomery, Ala., Alan W. Heldman, Special Asst. Atty. Gen., Birmingham, Ala., George Beck, Deputy Atty. Gen., Montgomery, Ala., for plaintiff-appellant.

Ira DeMent, U. S. Atty., Montgomery, Ala., Kent Frizzell, Asst. Atty. Gen., Jacques B. Gelin, Dennis M. O'Connell, Raymond N. Zagone, Attys., Dept. of Justice, Washington, D. C., for defendants-appellees.

Before GOLDBERG, AINSWORTH and INGRAHAM, Circuit Judges.

GOLDBERG, Circuit Judge:

This is an appeal from an order of the District Court for the Middle District of Alabama, Northern Division, dismissing appellant's complaint, which sought to permanently enjoin any mineral prospecting or mining in Bankhead National Forest in Alabama. During the pendency of the action below, all prospecting in Bankhead National Forest terminated. Appellant has not shown that there is any possibility of future prospecting or mining. Finding that appellant's complaint is therefore not justiciable, we affirm the District Court insofar as it dismissed appellant's complaint without prejudice.

On April 23, 1971, the United States Forest Service issued a prospecting permit to the Peabody Coal Co. "for the purpose of making excavations, drilling shot holes, or doing other work" to determine whether exploitable mineral resources existed in certain areas of the Bankhead National Forest in Alabama. On July 28, 1971, appellant, the State of Alabama ex rel. the State's Attorney General commenced this action against appellees, the Secretaries of the Departments of Agriculture and the Interior and various subordinate officials of these departments, seeking injunctive relief.[1]

Appellant's complaint outlined the ecological and environmental significance of Bankhead National Forest and alleged that appellees' actions would do irreparable harm to the Forest. The complaint was based both on the Alabama common-law theory of public nuisance and upon the language in the deeds that

---

1. Appellant's complaint was brought pursuant to the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 et seq., the laws of the United States relating to the establishment, management and regulation of the National Forests, 16 U.S.C. § 471 et seq., the Wilderness Act of 1964, 16 U.S.C. § 431 et seq., and Tit. 7, § 1084, Code of Alabama, 1940.

conveyed mineral rights to the lands in question. It challenged appellees' authority to permit prospecting and mining under federal law and appellees' failure to comply with the National Environmental Protection Act of 1969. Appellant specifically sought: (1) the termination and voiding of all outstanding authorizations and permits issued by the defendants for mineral prospecting or mining in any portion of the Bankhead Forest; (2) an injunction against the defendants from issuing or granting any permit or authorization for mineral prospecting or mining in any portion of the Bankhead Forest; and (3) an injunction to require the defendants to take all action necessary to prevent mineral prospecting in any portion of the Bankhead Forest whether or not the same is conducted pursuant to a purported permit or authorization. Appellant *did not seek declaratory relief.*

On September 10, 1971, with the consent of both parties, the District Court issued an order which enjoined appellees from issuing any further permits for prospecting for coal in Bankhead National Forest and from issuing any permits for strip mining for coal in the Forest until a final hearing on the merits of the case.

On March 17, 1972, during pretrial discovery, appellees filed an amended motion to dismiss, repeating the allegations of an earlier motion,[2] and alleging further that appellant's complaint was moot because all prospecting in Bankhead National Forest had been terminated (1) by Peabody Coal Company's completion of the prospecting commenced under the April 23, 1971 permit, and (2) by Peabody's withdrawal of an application for an additional prospecting permit. Appellee supported these contentions with affidavits. On April 4, 1972, the District Court dismissed appellant's complaint without prejudice and quashed

the preliminary injunction granted on September 10, 1971. The Court did not state any reasons for its ruling.

We perceive appellant's appeal as urging two grounds for reversal. (1) Appellant argues that the District Court should not have considered appellees' affidavits showing mootness submitted in support of appellees' amended motion to dismiss without first converting the motion into a motion for summary judgment pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. (2) Appellant also contends that the District Court should not have dismissed this proceeding pursuant to a motion to dismiss because the complaint stated a claim upon which relief could be granted. Westinghouse Electric Co. v. Wesley Construction Co., 5 Cir. 1969, 414 F.2d 1280.

■■ Appellant's argument concerning Rule 12(b) misses the point. The District Court was clearly correct in considering appellees' affidavits concerning mootness. As appellant recognizes, a District Court may consider outside matter attached to a motion to dismiss without first converting it into a motion for summary judgment if the material is pertinent to the question of the District Court's jurisdiction since it is always the obligation of a federal court to determine if it has jurisdiction. *See,* Kentucky-Tennessee Light and Power Company v. Nashville Coal Co., D.Ky.1941, 37 F.Supp. 728, aff'd 6 Cir. 1943, 136 F.2d 12; Fireman's Fund Ins. Co. v. Railway Express Agency, 6 Cir. 1958, 253 F.2d 780; Williams v. Minnesota Min. & Mfg. Co., S.D.Cal.1958, 14 F.R.D. 1.

■■ Although it is unclear whether the District Court dismissed appellant's complaint on jurisdictional grounds, it is always the obligation of this Court to determine, even on its own initiative,

---

2. On August 5, 1971, appellee filed a motion to dismiss which attacked both the jurisdiction of the District Court and appellant's standing to sue. Appellee's motion also alleged that appellant's complaint was deficient in that it failed to state a claim upon which relief could be granted and failed to join indispensable parties.

whether it has jurisdiction of an appeal and to dismiss the appeal if it appears that the Court is without jurisdiction. 21 Turtle Creek Square, Ltd. v. New York St. Retire. Sys., 5 Cir. 1968, 404 F.2d 31; *see,* Troy State University v. Dickey, 5 Cir. 1968, 402 F.2d 515. Since "[a]nything which bears upon the actual mootness of a controversy is a proper subject for a Court's consideration," Hunt Oil Co. v. Federal Power Comm., 5 Cir. 1962, 306 F.2d 359, 361; Troy State University v. Dickey, 5 Cir. 1968, 402 F.2d 515, 516, at oral argument we asked appellant to provide us with an affidavit that would establish that owners of mineral rights had either asked permission to prospect in Bankhead National Forest or were contemplating such action. Although appellant had previously stated both in the District Court complaint and by affidavit that it expected that prospecting would recur in the future,[3] appellant is now unable to provide this Court with an affidavit showing that the behavior of which it complains can reasonably be expected to recur.[4]

Under Article III of the Constitution Federal Courts are empowered to rule only upon an actual "case or controversy." As the Supreme Court stated in Aetna Life Ins. Co. v. Haworth, 1937, 300 U.S. 227, 240–241, 57 S.Ct. 461, 464, 81 L.Ed. 617, 621 (citations omitted):

> "A 'controversy' in this sense must be one that is appropriate for judicial determination. . . . A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and

---

3. Appellant stated ·in its District Court complaint that:

The State of Alabama is informed that the defendants anticipate that further applications will be made for permits to prospect for strip mining coal in the Bankhead Forest, and that applications will be made for permits or authorizations to strip and remove portions of the surface and underlying soil of the Forest and to strip mine for coal at substantial depths beneath the natural surface of the Forest. The State is informed that applications for prospecting and for mining will be made not only with respect to portions .of the Forest in which there are outstanding mineral interests but also with respect to lands in the Forest which are owned by the United States in fee simple.

and in an affidavit in support of a motion for a preliminary injunction that:

Affiant is informed and believes that the defendants anticipate that applications will be made to defendants for permits to survey or prospect for strip mining coal in the Bankhead Forest, and that applications will be made for permits or authorizations to strip and remove portions of the surface and underlying soil of the Bankhead Forest and to strip mine for coal at substantial depths beneath the natural surface of the Forest.

4. On December 11, 1972 appellant sent the following letter to the Clerk of the Court:

Dear Mr. Wadsworth:

As you know, this case was argued orally before Judges Ainsworth, Goldberg and Ingraham on Tuesday, December 5, 1972. At that time the Judges indicated that plaintiff's claim was moot since there was no one who was presently prospecting for minerals or strip mining in the Bankhead Forest. Judge Ainsworth suggested that if the State could provide an affidavit to the effect that other owners of outstanding mineral rights had either asked permission to prospect in the forest, or were contemplating such action, then he would consider remanding the case for a hearing. I advised the Court that I could not furnish such an affidavit but that I thought the Special Assistant Attorney General who tried · the case probably could.

Special Assistant Attorney General Alan Heldman who tried the case below, stated to me that he could not make such an affidavit in good faith without the benefit of discovery. Therefore, I will not be able to supply the requested affidavit. I trust that you will so inform the Judges.

Yours very truly,
/s/
George Beck
Deputy Attorney General.

substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

■ Although "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case . . . ." United States v. Concentrated Export Ass'n, Inc., 1968, 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344, 349, there must be at least a " . . . mere possibility [of recurrence] which serves to keep the case alive." United States v. W. T. Grant Co., 1953, 345 U.S. 629, 633, 73 S.Ct. 894, 898, 97 L.Ed. 1303, 1309.

■ This Court has been unable to perceive that there is a " . . . reasonable expectation that the wrong will be repeated . . . ." United States v. W. T. Grant Co., 1953, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303, 1309, or that there exists a justiciable case or controversy. The only operative fact that supported appellant's complaint was that Peabody Coal Company was prospecting in Bankhead National Forest. Since Peabody Coal Company ceased to prospect and withdrew all applications to prospect, and since there does not now appear to be any prospecting or any cognizable danger of future prospecting, it is therefore only appropriate that this Court declare that this case, insofar as it attempts to enjoin prospecting in Bankhead National Forest, is moot.

■ Appellant further contends that the future issuance of prospecting and mining permits in the Bankhead will be environmentally damaging because the mining companies might utilize "strip mining" techniques in Bankhead National Forest. As stated earlier, there are no prospecting permits, let alone mining permits now outstanding in Bankhead National Forest. The question of what techniques mining companies would utilize in the Forest is entirely speculative. A hypothetical threat, based on speculative facts, is not enough to support the jurisdiction of a Federal Court. Hodgson v. H. Morgan Daniel Seafoods, Inc., 5 Cir. 1970, 433 F.2d 918. The issue " . . . must be presented in the context of a specific live grievance." Golden v. Zwickler, 1969, 394 U.S. 103, 110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113, 118. It is clear that this claim is not ripe for adjudication and that it should be dismissed without prejudice. We in no way make any decision on the merits of appellant's complaint or on any question other than its current justiciability. Naturally if this matter ripens into a case or controversy appellant will be free to refile in the Federal Courts. See, Costello v. United States, 1961, 365 U.S. 265, 285–287, 81 S.Ct. 534, 5 L.Ed.2d 551, 564–566.

■ This Court is cognizant of the great need to protect the ecological wonders of areas such as Bankhead National Forest. We are also aware of the commendable service that the Sovereign State of Alabama performs for its citizens and for all mankind when it attempts to protect the environment and natural wonders such as Bankhead National Forest. However, this Court is not empowered to act as an ombudsman or a legislature. We can act only upon concrete cases or controversies. Appellants have failed to confront us with such a case or controversy and therefore the Constitution precludes us from exercising jurisdiction. Mootness is not statical and once it makes a positive entrance into litigation, our jurisdictional exit is mandated. It is not fixed by time or compass, and the actual fact of the nonexistentiality of a case or controversy is all that is necessary to sound the knell of a parting case. A suit must have an elan vital, and if this is nonexistent the case must be buried subject to reincarnation which would start its life again with a new birth and another day in Court.

Time, which is one of the judiciary's most precious commodities, would be wasted by a remand to the District Court to redetermine mootness. This Court provided appellant with an oppor-

tunity to infuse life into this litigation but appellant was unable to do so. It is therefore ordered that insofar as the District Court dismissed appellant's complaint without prejudice, we affirm.

Affirmed.