Marie SANNON et al., Petitioners–Appellees,

v.

UNITED STATES of America et al., Respondents–Appellants.

No. 80–5088.

United States Court of Appeals, Fifth Circuit.

Dec. 4, 1980.

Daniel E. Fromstein, Atty., Criminal Div., U. S. Dept. of Justice, Washington, D. C., Rex Young, Atty., Immig. & Nat. Service, U. S. Dept. of Justice, Washington, D. C., for respondents–appellants.

Ira Kurzban, National Emergency & Civil Liberties, Bierman, Sonnett, Beiley & Osman, Donald I. Bierman, Almon & Brodsky, Michael Brodsky, Miami, Fla., for petitioners–appellees.

Before RONEY, HILL and FAY, Circuit Judges.

JAMES C. HILL, Circuit Judge:

The government asserts in this appeal that a federal district court has exceeded its authority by requiring the Immigration and Naturalization Service (INS) to publicize certain new regulations more extensively than the notice provisions of the Administrative Procedure Act, see 5 U.S.C. § 553 (1976), would mandate. Determining that all named petitioners have received the relief they sought in this lawsuit and regarding class–wide relief as constitutionally impermissible under the facts, we remand the case to the district court with instructions to vacate the existing injunction[1] without provision,[2] and to dismiss the case as moot.

## I. Facts and Procedural History

On April 4, 1974, a group of named Haitian refugees filed the lead lawsuit in these consolidated cases challenging by way of habeas corpus INS orders denying them entry into the United States. In the initial years of the lawsuit, the number of named petitioners grew as additional parties successfully moved the district court for joinder.[3] The essence of petitioners' arguments was that the immigration judges at petitioners' exclusion hearings[4] improperly narrowed the scope of the proceedings and improperly refused to consider petitioners' claims for asylum. While petitioners prevailed initially in the district court, see Sannon v. United States, 427 F.Supp. 1270 (S.D. Fla.1977), this Court vacated that decision and remanded, see 566 F.2d 104 (5th Cir. 1978), the case for consideration in light of Pierre v. United States, 547 F.2d 1281 (5th Cir. 1977), cert. granted, vacated and re-manded for consideration of mootness, 434 U.S. 962, 98 S.Ct. 498, 54 L.Ed.2d 447 (1977). Following the remand of Sannon, the district court enjoined the INS from holding exclusion hearings involving Haitians until final disposition of the case. After an initial misfire[5] properly promulgated INS regulations, see 44 Fed.Reg. 21,253–21,259 (1979), bearing on this litigation became effective. These regulations ensure that refugees wishing political asylum in this country will be permitted to raise asylum claims in their exclusion hearings. On June 14, 1979, the district court announced its intention to dismiss these cases as moot since petitioners' objection, that their political asylum claims went unconsidered by immigration judges at their exclusion hearings, was cured by the new regulations. The district court made clear, however, by order dated July 25, 1979, that the injunction against further exclusion hearings would continue until the entry of a final order of mootness. While some confusion ensued in the interim among government counsel[6] as to precisely what motions or affidavits had or had not been filed, on January 7, 1980 the district court issued its final order. On April 11, 1980, the district court denied an earlier filed government motion for relief under Fed.R.Civ.P. 60(b), but entered an order correcting clerical mistakes contained in the January 7 final order. The government perfected a timely appeal to this Court.

The district court's order declared these cases moot and dissolved the October 11, 1978 injunction *with the provision* that the

---

1. The injunction originally was decreed in open court on September 8, 1978. The first written reference to it appeared on October 11, 1978, when the district court decided *Sannon v. United states*, 460 F.Supp. 458, 468 (S.D.Fla.1978).

2. The district court's final order of January 7, 1980 dissolved the injunction "with the *provision* that the regulations . . . be implemented" as ordered. Record, vol. 7, at 50 (emphasis added).

3. The case also grew as a result of the district court's consolidation of cases for trial and as a result of intervention.

4. See 8 U.S.C. § 1226 (1976).

5. The first attempt to revise came on September 13, 1978, see 43 Fed.Reg. 40,801 (1978). The district court, however, held the promulgation violative of the Administrative Procedure Act "since there was neither notice of proposed rule making nor opportunity to comment . . ., and the effective date of the final rule was not delayed for thirty days after publication." 460 F.Supp. at 468.

6. As a result of a mistaken impression, government counsel filed a Petition for Writ of Mandamus with hopes of convincing this Court to mandate the district judge to enter a final order in these cases. The government shortly thereafter moved for, and was allowed to withdraw the petition.

new federal regulations be implemented by the INS in a specific manner. The order stated that the petitioners in these cases "have an *absolute* right to a hearing on their claims for political asylum and [that] no action to exclude them can be finalized until they have been given a full, fair and impartial evidentiary hearing on their claims for political asylum before an Immigration Judge." Record, vol. 7, at 71. Moreover, the court required the INS to alert all potential Haitian asylum claimants of the new regulations by means of a notice, in English and Creole, contained in Schedule A of the order. This notice was to be published weekly for six months in more than ten newspapers, broadcast nightly for six months over more than ten radio stations, broadcast weekly for six months over television stations, and posted in more than 22 designated grocery stores, community centers and churches. Schedule B, §§ 5, 6 of the district court's order further required the INS: (1) to provide the Schedule A written notice to all Haitians who appear in INS offices; (2) to provide such written and oral notice to all detained Haitians at least 36 hours in advance of any final deportation action; and (3) to provide such written and oral notice "to all Haitians known to the INS who arrive and/or seek entry into the U.S." when they first appear before INS officials. It is this district court order, as corrected, and its conditional injunction, that the government has appealed and which we instruct the district court to vacate and dismiss.

## II. *Named Petitioners*

█ Turning to the effect of the April 10, 1979 regulations upon the claims advanced by the named petitioners, we note at the outset several well established restraints on the exercise of federal jurisdiction. The federal courts are said to be of "limited jurisdiction," *see County Court of Ulster County, N. Y. v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979). The Constitution of the United States ex-

tends the "judicial Power" of the federal government only to "Cases" or "Controversies." U.S.Const., art. III, § 2. The "case or controversy" requirement demands, *inter alia,* that a cause of action before a federal court present a "justiciable" controversy. Moreover, "no justiciable controversy is presented ... when the question sought to be adjudicated has been mooted by subsequent developments...." *Flast v. Cohen,* 392 U.S. 83, 95, 88 S.Ct. 1942, 1949, 20 L.Ed.2d 947 (1968) (footnote omitted). *See also Benton v. Maryland,* 395 U.S. 784, 788, 89 S.Ct. 2056, 2059, 23 L.Ed.2d 707 (1969). Clearly, the federal courts require vitality of a lawsuit at *all* stages of the action, not merely at its institution. *Defunis v. Odegaard,* 416 U.S. 312, 319, 94 S.Ct. 1704, 1707, 40 L.Ed.2d 164 (1974); *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973); *Carr v. Saucier,* 582 F.2d 14, 16 (5th Cir. 1978); *Brown v. Liberty Loan Corp. of Duval,* 539 F.2d 1355 (5th Cir. 1976), *cert. denied,* 430 U.S. 949, 97 S.Ct. 1588, 51 L.Ed.2d 797 (1977); *McDonald v. Oliver,* 525 F.2d 1217, 1255 (5th Cir.), *cert. denied,* 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976). Striking at the very heart of federal subject matter jurisdiction,[7] a mootness issue quite clearly can be raised *sua sponte* if not addressed by the parties. *State of Alabama ex rel. Baxley v. Woody,* 473 F.2d 10, 12–13 (5th Cir. 1973).

█ In this appeal, we observe that the named petitioners have sought from the outset to present their claims for political asylum to an immigration judge. Under the regulations that became effective on April 10, 1979, *see* 44 Fed.Reg. 21,253–21,259 (1979), each named petitioner in the cases before us has the right to exactly the hearing he sought. That newly promulgated regulations immediately applicable to litigants in a given case can have the effect of mooting what once was a viable case is without doubt. *Carr v. Saucier,* 582 F.2d 14 (5th Cir. 1978) (amendment of federal regu-

7. Whatever doubt once might have existed over the constitutional basis of the mootness doctrine, *see, e. g.,* H. Hart & H. Wechsler, The Federal Courts and the Federal System 122 (1st ed. 1953), was laid to rest in 1964. *See Liner v.* *Jafco, Inc.,* 375 U.S. 301, 306 n.3, 84 S.Ct. 391, 394 n.3, 11 L.Ed.2d 347 (1964); *see generally* Note, the Mootness Doctrine in the Supreme Court, 88 Harv.L.Rev. 373, 375 n.12 (1974).

lation under attack may moot controversy); *Jeffers v. Louisiana State Univ.*, 511 F.2d 131 (5th Cir. 1975) (amendment of university regulation under constitutional attack moots controversy); *Logan v. West Orange–Cove Independent School District*, 440 F.2d 1076 (5th Cir. 1971) (repeal of school regulation under constitutional attack moots controversy).[8] Furthermore, the government has articulated quite clearly that "[a]ll petitioners in these three consolidated habeas corpus cases now are entitled" to hearings "on their asylum claims" before immigration judges. Appellant's Reply Brief at 17. Indeed, the government concedes this to be required by the new regulations, 8 C.F.R. § 236.3 (1980). Accordingly, as to the named petitioners there exists no viable controversy over Paragraph A[9] of the district court's order, and the appeal therefrom is moot.

■ Paragraph B[10] of the district court's order, as supplemented by the extensive notice requirements of Schedules A & B, essentially requires the INS to inform for a period of six months potential political asylum claimants of their new rights under the April 10, 1979 regulations. Unable to convince this Court to stay the district court's final order pending appeal, the government allegedly has complied with Paragraph B,

Sched. A & Sched. B, pts. 1–4, for the requisite six months.[11] Accordingly, the appeal from those portions of the order is moot by the passage of time.

The remaining portions of the district court order, which grant mandatory injunctive relief to Haitians who are not named as petitioners in this action, bring into issue the appropriateness of "class"–wide relief in this action. It is to these concerns that we now turn.

### III. Class–Wide Relief

The absence of a class certification order by the district court notwithstanding, petitioners assert on appeal that this litigation has been conducted from the outset as a class action and should be recognized as such by this Court.[12] Conceding that they never moved the trial court for a certification order throughout six litigious years, petitioners nonetheless maintain that class–wide relief is appropriate by directing us to a line of Fifth Circuit cases in which we rejected an "excessively formalistic adherence," *Bing v. Roadway Express, Inc.*, 485 F.2d 441, 446 (5th Cir. 1973), to Fed.R.Civ.P. 23. In *Bing* and its progeny we were able to "infer that the trial court [had] approved the class action nature," *id.*, of the lawsuits involved. *See Johnson v. General Motors*

8. It is, of course, clear that under proper legal and factual circumstances new regulations promulgated by a federal agency can affect a controversy without rendering it moot. *E. g., First Nat'l Bank of Lamarque v. Smith*, 610 F.2d 1258, 1262–63 (5th Cir. 1980).

9. Paragraph A of the order states in pertinent part:
 All petitioners in *Sannon, Jean–Baptiste*, and *Cyriaque* ... have an absolute right to a hearing on their claims for political asylum and no action to exclude them can be finalized until they have been given a full, fair and impartial evidentiary hearing on their claims for political asylum before an Immigration Judge.

10. Paragraph B of the order states:
 The Immigration and Naturalization Service shall provide in Creole and in English the notice marked Schedule A, attached to this Order, in the manner and method outlined and prescribed in Schedule B which is also attached to this Order.
 Record vol. 7, at 50.

11. At oral argument, counsel for appellant indicated that the six–month period would terminate in October or November, 1980. In a supplemental letter memorandum filed after oral argument with permission of this Court, counsel for appellees stated that more than four months of the six–month notice period had expired. The letter was dated August 26, 1980. Based on counsels' statements, we assume the full six months expired at the end of October 1980, at the latest.

12. As an alternative to their argument for class–wide relief, petitioners further have asserted *jus tertii* standing to raise alleged constitutional defects in the April 10, 1979 regulations. This contention must fail. *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), which is conceded by petitioners as controlling on this issue, requires as a matter of constitutional law that the "*jus tertii* champion," 429 U.S. at 194, 97 S.Ct. at 455, suffer injury in fact by the alleged constitutional defect. *Id.* These named petitioners are not so injured.

Corp., 598 F.2d 432 (5th Cir. 1979); *Gore v. Turner*, 563 F.2d 159 (5th Cir. 1977).

 The principle recognized in *Bing*, however, has no application in this case where mootness is the decisional ground as to the named petitioners, *see* Part II *supra*. Petitioners' failure to move for and to obtain class certification below, coupled with our finding of mootness as to the underlying substantive claims of the named petitioners, necessitates our further finding pervasive mootness that extends to the alleged class. *See Board of School Comm'rs of City of Indianapolis v. Jacobs*, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975); *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). In *Jacobs* the Supreme Court held that "[b]ecause the class action was never properly certified nor the class properly identified by the District Court," the decision that the claims of the purported representative were moot dictated dismissal of the uncertified "class" action as well. 420 U.S. at 130, 95 S.Ct. at 850.

Our decision that *Jacobs* requires dismissal of the purported "class" in this case is unaltered by the Supreme Court's recent decision in *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). *Geraghty* presented the narrow question "whether a trial court's denial of motion for certification of a class may be viewed on appeal after the named plaintiff's personal claim has become 'moot.'" *Id.* at 1205. The Court held that following such a denial, the proposed class representative does maintain a concrete Article III "case" or "controversy" but only for the limited purpose of challenging the class certification denial. *Id.* at 1212.

Petitioners in this case never moved the court for class certification and thus never solidified the requisite Article III adverseness between members of the would be class and the INS. Accordingly, the "class" issue they raised does not relate to *denial* of certification and subsequent mootness of the purported representatives' claims, *Geraghty, supra*, but rather relates to *failure* to certify prior to the dawn of mootness, *Jacobs, supra*. *See* 100 S.Ct. at 1210 n.7; *see also Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980).

The approach that this Court has adopted to avoid "excessively formalistic adherence" to Rule 23 then, does not obtain when justiciability is involved. The elaborate jurisprudence that defines the "shifting contours," *Flast v. Cohen*, 392 U.S. 83, 97, 88 S.Ct. 1942, 1951, 20 L.Ed.2d 947 (1968), of Article III, albeit reflective of "practicalities and prudential considerations," 100 S.Ct. at 1213 n.11, is not wholly extramural. The constitutional law of federal jurisdiction cannot defer to the wholly procedural accommodation that *Bing* and its lineage represent. On the authority of *Board of School Comm'rs of City of Indianapolis v. Jacobs, supra*, we dismiss the purported uncertified "class" action as moot.

### IV. Conclusion

While a reading of the record and history of this matter reveals both the frustrations and arduous labor of the experienced trial judge, once the oft delayed amendments to the INS regulations granted the same relief as ordered by the court, the legal issue became moot.

For the reasons stated, we remand this case to the district court with directions to vacate the final order of January 7, 1980, as corrected by order of April 11, 1980, and to dismiss the case as moot.

REMANDED WITH DIRECTIONS.