Barbara Cantwell CHRISTMAN, Opal Whitehair, Linda Matheny, Betty Moler Riggs, Mary Carpenter, Denise Cline, Lola Rymer, Donna Martin, Carolyn Lowe, Joyce Richardson, Linda Moore, Deborah K. Nicely and Linda Huggins, individually and on behalf of all other persons similarly situated, and Oil Chemical and Atomic Workers International Union, Plaintiffs,

v.

AMERICAN CYANAMID COMPANY, Defendant.

Civ. A. No. 80–0024–P(K).

United States District Court, N.D. West Virginia, Parkersburg Division.

Aug. 31, 1983.

See also D.C., 92 F.R.D. 441.

John E. Bertin, et al., American Civil Liberties Union Foundation, New York City, David G. Hanlon, Harrisville, W.Va., Pat Brady, Kramer, Levin, Nessen Kamin & Frankel, New York City, for plaintiffs.

Robert E. Wages, Asst. General Counsel, Denver, Colo., and Franklin D. Cleckley, Morgantown, W.Va., for Oil Chemical Union.

Robert M. Steptoe, Jr., Steptoe & Johnson, Clarksburg, W.Va., and Ronald S. Cooper, Daniel Sauls, Steptoe & Johnson, Washington, D.C., for defendant.

## MEMORANDUM OPINION

KIDD, District Judge.

This action is brought under Title VII of the Civil Rights Act of 1964 [1] to redress sex discrimination allegedly practiced by the defendant, American Cyanamid, in its employment and hiring policies for the production and maintenance work force at its plant in Willow Island, West Virginia.[2] Plaintiffs seek both injunctive and monetary relief.

The defendant moves this Court, pursuant to Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure and Local Rule 2.06, for an order dismissing or, in the alternative, granting it summary judgment on plaintiffs' claims for intentional infliction of emotional distress and invasion of privacy based upon the argument that these claims are barred by the applicable statute of limitations. The defendant also moves this Court for partial summary judgment in this action, alleging lack of standing. Following the submission of memoranda on these issues, the Court held a hearing on July 12, 1983. At the close of the hearing this Court took defendant's motions under advisement and now issues this Memorandum Opinion.

### I.

The defendant, American Cyanamid, argues that plaintiffs' common law tort actions of invasion of privacy and intentional infliction of emotional distress are barred by the statute of limitations. Cyanamid argues that the torts of intentional infliction of emotional distress and invasion of privacy are personal intangibles that do not survive. The plaintiffs argue that these torts are tangible torts which survive under West Virginia law.

The Court must look to the state law of the jurisdiction where it is located to determine what statute of limitation is applicable. It is clear West Virginia law is applicable in this instance. *Erie Ry. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Copley v. Northwestern Mutual Life Insurance Co.,* 295 F.Supp. 93 (SD W.Va.1968). In their memoranda, the parties agree that West Virginia law applies but take the position that different provisions of the statute apply to this action. *See West Virginia Code* 55-2-12 and 55-7-8a. Plaintiffs argue that their claims for intentional infliction of emotional distress and invasion of privacy "redress wrongful intrusions against the victim's person." They further argue that these torts had a tangible effect and therefore survive under West Virginia law under a two year limitations period, as governed by Chapter 55, Article 2, Section 12 of the West Virginia Code.

---

1. 42 U.S.C. §§ 2000e through 2000e–17.

2. This Court has original jurisdiction under 28 U.S.C. § 1343 and 42 U.S.C. § 2000e–5(f).

Chapter 55, Article 2, Section 12 of the West Virginia Code provides:

[e]very personal action for which no limitation is otherwise prescribed shall be brought: (1) within two years next after the right to bring the same shall have accrued, if it be for damages to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

In *Snodgrass v. Sisson's Mobile Home Sales, Inc.*, 244 S.E.2d 321, 324–5 (W.Va. 1978), the court held that West Virginia Code 55–2–12 must be read in pari materia with Chapter 55–7–8a(a) of the West Virginia Code. West Virginia Code, Chapter 55, Article 7, Section 8a(a) provides:

In addition to the causes of action which survive at common law, causes of action for injuries to property, real or personal, or injuries to the person and not resulting in death, or for deceit or fraud, also shall survive and such actions may be brought notwithstanding the death of the person entitled to recover or the death of the person liable.

Plaintiffs argue that in actions for personal injuries the action must be brought within two years after the right to bring such action accrues while the defendant argues it must be brought within one year after the right accrues.

■ Under West Virginia Code 55–2–12, there is no express limitations period provided for the torts of invasion of privacy and intentional infliction of emotional distress. A common law right of action for damages for invasion of privacy does exist under West Virginia law. *Roach v. Harper*, 143 W.Va. 869, 105 S.E.2d 564 (1958). It is clear that personal torts such as defamation, false arrest and imprisonment, and malicious prosecution were intentionally excluded by the West Virginia Legislature under Subsection (a) of Chapter 55–7–8a of the West Virginia Code. *Cavendish v. Moffitt*, 253 S.E.2d 558 (W.Va.1979). Chapter 55–7–8a(f) limits the survivability of personal tort actions to those set forth in that subdivision as the language provides that "nothing contained in this section shall be construed to extend the time within which an action for any other tort shall be brought." Further, West Virginia Code 55–2–12(c) sets forth that there are actions which do not survive at common law which indicates that the statutory survivability created under Chapter 55, Article 7, Section 8a is limited to those causes of action specifically provided therein. Further, the West Virginia Legislature intended 55–7–8a to apply to those common law tort actions involving physical or bodily injuries.

■ These two actions involve the intentional infliction of emotional distress and invasion of privacy which are personal and this Court finds that the State's one year statute of limitations applies.

## II.

Plaintiffs' further argue that no matter whether the one or two year statute of limitation applies, their causes of action for intentional infliction of emotional distress and invasion of privacy should not be barred because of its continuous nature. Defendant argues that the claims accrued when the plaintiffs suffered the consequence of its medical protection policy and that the acts were separate and distinct causes of action. However, plaintiffs allege that the torts were of a continuous nature and that such claims did not accrue until a date within either the one or two year statute of limitations.

■ The parties agree that the announcement of the medical protection policy was made in January 1978 and that the policy was implemented by the defendant in October 1978. In *Handley v. Town of Shinnston*, 289 S.E.2d 201 (W.Va.1982) the court held that:

"[W]here a tort involves a continuing or repeated injury, the cause of action

accrues at, and limitations begin to run from the date of the last injury, or when the tortious overt acts cease."

As in *Handley*, the damage in this action increased during the progression of time and was not a one occurrence, with each injury being a new wrong. It is clear that where the original act or cause of injury is permanent in nature, and the damages are both present and prospective, they may be recovered in one action, and the statute will be regarded as attaching at the time the act complained of is done. *Gulf, C & SFR Co. v. Moseley*, 161 F. 72 (8th Cir.1908). There is no requirement that all damages resulting from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date. The act is regarded as the ground of action and it is then that the statute begins to run. *Scott v. Rinehart & D Co.*, 116 W.Va. 319, 180 S.E. 276 (1935).

■ In the present action, plaintiffs' claims for intentional infliction of emotional distress and invasion of privacy derive from several separate acts or events. The Court finds that the injuries in this action were clearly separable and immediately ascertainable and that the plaintiffs have several causes of action, rather than a single, continuous cause of action, for intention and infliction of emotional distress and invasion of privacy.

### III.

The defendant's next argument is that the plaintiffs lack standing to sue for injunctive relief under their Title VII claims.

■ The case or controversy limitation on a court's jurisdiction derives from the Federal Constitution. *U.S. Const.*, Art. III, § 2. If a party does not have standing to sue this essentially means that no case or controversy is presented for adjudication. *Gilligan v. Morgan*, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973). Stand-

ing is but one aspect of the case or controversy requirement for a viable law suit. Thus, no case or controversy is presented—no justiciable controversy exists—when the Court is called upon to decide a political question, when an advisory opinion is sought, when subsequent developments moot the issues or when the plaintiff lacks standing to sue. *Flast v. Cohen*, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968). One would have "standing" to sue when he is said to have ". . . such a personal stake in the outcome of the controversy as to insure the concrete adverseness upon which the court depends for illumination of the questions in the case." *Richardson v. Ramirez*, 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974). "Personal stake in the outcome" is the gist of the standing doctrine. By way of example, the United States Supreme Court held in *Tileston v. Ullman*, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943), that a doctor lacked standing to bring suit challenging a Connecticut statute regulating use of drugs or instruments to prevent conception when it was the non-party public or patient who stood to suffer from the law. Modern analysis of standing characterizes the issue as determining whether there is an "injury in fact" and then focusing upon whether the plaintiff is within the "zone of interest" necessitating judicial protection. *E.g.*, *Marshall & Ilsley Corp. v. Heinmann*, 652 F.2d 685 (7th Cir. 1981).[3]

■ On the other hand, mootness means that no actual controversy exists which is subject to judicial resolution; the actual conflict must exist when the question is considered, not when the action was brought. *Cf., Allee v. Medrano*, 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974) (mootness while on appeal). A recognized exception to the mootness doctrine is the issue which may be resolved during litigation and, therefore, evades review but is capable of repetition. *Flory v. F.C.C.*, 528

---

**3.** *See also, Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), principally relied upon by Cyanamid in its argument.

F.2d 124 (7th Cir.1975). A good discussion of mootness and the exception would include a suit in which the State of Alabama sought to enjoin the United States Secretary of Agriculture from prospecting or mining in a national forest. In *State of Alabama ex rel. Baxley v. Woody*, 473 F.2d 10 (5th Cir.1973), the Secretary was allowing the conduct of such activity when the suit was brought, but terminated his efforts during the pendency of the action. The Fifth Circuit found the issue to be moot when it appeared that prospecting had ceased and there was no "cognizable danger of future prospecting." *Id.* at 14. The test appears to be whether "it can be said with assurance that there is no reasonable expectation that the wrong will be repeated." *Commonwealth of Virginia ex rel. Coleman v. Califano*, 631 F.2d 324, 326 (4th Cir.1980).

Therefore, there may be overlap in the doctrines relied upon in support of the defendant's contention that a justiciable controversy does not exist. Thus, based upon the foregoing analysis, the Court will analyze the current issues from the broader prospective of whether, generally, a case or controversy has been presented with regard to the prayer for an injunction.

### Company's Position

Based upon a report of the Occupational Exposure Review Committee, (OERC), formed by Cyanamid to study the effects of chemicals upon fetal well being, the Company ultimately issued a policy statement to each of its holdings which identified six chemicals used or produced in its various operations which had the potential of causing fetal harm; Diamox, Hydrazine Sulfate, Hydrazine Hydrate, Lead, Methotrexate and Thiotepa.[4] Diamox was deleted from the list by later action of the OERC. Cyanamid says that only lead was in use at the Willow Island Plant, none of the other chemicals were ever used at Wil-

low Island in a manner requiring control, and the chemicals "are not likely to be produced at the facility in the immediate future." (Exhibits 10 and 11 supporting "Motion for Partial Summary Judgment"). In the affiant's words, Cyanamid has "no present intention" to use the disputed substances at Willow Island.

Cyanamid insists, *inter alia*, that the plaintiffs do not satisfy the "injury-in-fact" requirement mentioned above. It says that four of the five chemicals listed as potentially dangerous are not used and have not been used at Willow Island and, therefore, no Willow Island employee can meet the "injury-in-fact" test required for standing. Likewise, the Company says that the plaintiffs cannot rely upon a "threatened injury" to support their request for injunction because they have neither alleged threatened injury in their complaint, nor can they prove that they are in real and immediate danger.[5]

The Company next says that the plaintiffs lack standing to enjoin the use of lead at Willow Island because lead was not produced at Willow Island when this case was begun. Again, Cyanamid also says there is "no present intention" to introduce lead at this facility in the "immediate future." And, counsel insists that "the burden is [the plaintiffs] of demonstrating future harm."

### Plaintiffs' Position

The plaintiffs basically say that the injunction issue raised by Cyanamid is an attempt to fragmentize this aspect of the case by encouraging focus upon a small portion of the case. Plaintiffs say that their desire is to enjoin discriminatory conduct, in whatever form it has taken over the course of the relationship between the parties; it is the overall alleged discriminatory policy that the plaintiffs wish to stop. In their second amended complaint, the

---

**4.** The original refined list of chemicals identified by the Company as being potentially dangerous was numbered at 29 and this list was refined after study to include the five or six listed.

**5.** *Valley Forge, supra,* Footnote 1 announced that the injury must have actually been suffered or be threatened as part of the test for standing.

plaintiffs seek wide ranging injunctive relief couched in such phrases as preventing the defendant from: "... adopting or implementing an exclusionary policy ...", failing "to adopt sex-neutral rules and policies ...", failing "to expunge all unnecessary references ... to gynecological surgery ...", "harassment of women employees ...", and so forth.

 The Court is of the opinion that Cyanamid is attempting to prematurely litigate the issue of the propriety of injunctive relief rather than demonstrating that no genuine issue of fact exists in this regard. It seems that the defendant is saying that since it has filed affidavits which disclose a remote likelihood of introducing or reintroducing certain substances to Willow Island, the plaintiffs lose standing to enjoin certain limited practices. The plaintiffs say, not only has Cyanamid failed to address the proper issue (the overall discriminatory policies), but in addition have failed to demonstrate a lack of factual conflict in this regard. By its very nature, a statement like "maybe we won't do it soon" creates an issue requiring factual development and exploration.

After all the facts have been presented in this action the Court will be in a position to say that certain policies or practices are, or are not, subject to restriction and should, or should not, be enjoined. The Court will then be able to ascertain whether these plaintiffs[6] stand to suffer harm from Cyanamid's actual activities. The Court may also then be able to determine whether specific practices of the Company exist or are "capable of repetition yet [have been] evading review."[7] However, no matter what the ultimate evidence, the Court will never be in a position to address every particular policy, practice, act or occurrence at Cyanamid and issue a ruling thereon. Likewise, the Court cannot simply say "do justice" or "follow the law." The relief granted by the Court will be based upon and confined to the pleadings of the parties and the weight of the evidence.

For the reasons set forth herein and other reasons appearing to the Court, it is hereby ORDERED:

1. That defendant's motion for summary judgment upon plaintiffs' claims for intentional infliction of emotional distress and invasion of privacy is hereby GRANTED.

2. The defendant's motion for partial summary judgment based upon the claim of standing is DENIED.

The Clerk is directed to transmit certified copies of this Memorandum Opinion to counsel of record herein.

---

6. Standing issue.

7. *E.g., Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (mootness issue).