413 S.E.2d 79

**FUNERAL SERVICES BY GREGORY, INC., d/b/a the Kimball Funeral Home, Keith Gregory and Cassandra Miller Gregory, Plaintiffs Below, Appellants,**

v.

**BLUEFIELD COMMUNITY HOSPITAL, Dr. Naeem Qazi, and Other Unknown Individuals who Performed an Autopsy on the Deceased, and Other Unknown Individuals, Defendants Below, Appellees.**

No. 19778.

Supreme Court of Appeals of West Virginia.

Submitted May 8, 1991.

Decided Dec. 5, 1991.

James A. McKowen, Hunt & Wilson, Charleston, and Robert H. Carlton, Williamson, for appellants.

Karen Speidel Rodgers, Kay, Casto, Chaney, Love & Wise, Charleston, for appellee, Bluefield Community Hosp.

Matthew P. Moriarty, Richard W. Stuhr, Robert L. Brandfass, Jacobson, Maynard, Tuschman & Kalur, Charleston, for appellee, Naeem Qazi, M.D.

Harold D. Brewster, Jr., Brewster, Morhous & Cameron, Bluefield, for appellee, Dr. Dennis Pullins.

**BROTHERTON, Justice:**

In this case, we are asked to determine whether a mortician who embalmed a corpse, unaware that it was infected with Acquired Immune Deficiency Syndrome, was subjected to a battery. The appellants, Keith Gregory and his wife, Cassandra Miller Gregory, appeal from August 17, 1989, and November 14, 1989, rulings of the Circuit Court of Mercer County which dismissed all of their claims against the appellees, Bluefield Community Hospital, Dr. Naeem Qazi, and other unnamed individuals.

Keith Gregory is a mortician who embalmed the body of "John Doe," a man who died at Bluefield Community Hospital on June 5, 1986. According to the hospital, when John Doe was admitted on May 25, 1986, the only medical history he reported was having had pneumonia in the past

week and using antibiotics. He denied ever having any major medical problems.

However, on the day of John Doe's funeral, June 11, 1986, Gregory learned from the hospital that John Doe was infected with the Acquired Immune Deficiency Syndrome (hereinafter referred to as AIDS)[1] at the time of his death. Nearly two years later, on June 3, 1988, Gregory and his wife initiated a suit for damages in the amount of four million dollars[2] against the appellees, seeking recovery for severe emotional distress under several theories, including battery, intentional and negligent infliction of emotional distress, and intentional and negligent misrepresentation.

The lower court dismissed all of Gregory's claims except the battery claim on August 17, 1989. The court concluded that all claims other than the battery claim were governed by the one-year statute of limitations found in W.Va.Code § 55-2-12(c) and were therefore time-barred. On September 29, 1989, both parties moved for summary judgment on the remaining claim. By order dated November 14, 1989, the lower court granted the appellees' motion for summary judgment and dismissed the battery claim, indicating that the facts alleged by the Gregorys did not establish the type of harmful or offensive touching necessary to constitute a battery.

The facts contained in the record now before this Court reveal that after John Doe died on June 5, 1986, the hospital released the body to Kimball Funeral Home for embalming and funeral services. Michael Nowlin and Daniel Gregory, the plaintiff's brother, picked up the body at the hospital morgue. Hospital personnel told the men to wear protective gloves, masks, aprons, hats, and booties. Although they found these precautions a bit unusual, both men maintain that they were not told that John Doe was an AIDS-infected corpse, and that neither the toe tag[3] on

---

1. For a discussion of the medical implications of AIDS, see this Court's opinion in *Benjamin R. v. Orkin Exterminating Company, Inc.,* 182 W.Va. 615, 390 S.E.2d 814 (1990).

2. In addition, the plaintiffs seek pre-judgment and post-judgment interest, attorneys fees, court costs, and punitive damages.

3. The plaintiffs allege that the hospital used a plain tag instead of the red infectious body tag

the body nor the death certificate mentioned AIDS as a possible cause of death. Nowlin and Daniel Gregory stated that the body was bloody because it had been subjected to a full autopsy, so they wrapped it in garbage bags to prevent it from soiling their cot and blanket any more than necessary. They subsequently delivered the body and the death certificate to the preparation room of the Gregory Funeral Home in Williamson, West Virginia.

The appellant, Keith Gregory, states that he was not unduly concerned when he began the embalming procedure on John Doe, because the death certificate did not list AIDS as a cause of death and the toe tag on the body did not indicate that an infectious disease was involved. However, after working on the body for about ninety minutes, Gregory took a break, at which time his brother Daniel related his perception that hospital personnel were acting strange in making him and Nowlin wear so much protective gear before removing the body. Gregory was suspicious, but because he did not want to stop in the middle of embalming the body, he went back to the preparation room and put on additional protective clothing.[4] Upon completing the embalming procedure, he washed his arms with Clorox bleach and took his clothes off and later burned them. He immediately showered and then washed his hands and fingernails with Clorox.

As we noted above, on the morning of John Doe's funeral on June 11, 1986, the hospital called Keith Gregory and informed him that John Doe had probably died of AIDS. Gregory states that if he had known from the beginning that John Doe was infected with the AIDS virus, he would have suggested that the family arrange a burial within twenty-four hours, cremation, or a closed casket funeral service. These procedures would not require embalming

the body. If the family had insisted upon embalming, Gregory would have taken steps to minimize his exposure, such as wearing additional protective clothing, asking another mortician to assist in the procedure in order to reduce preparation time, or sending the body to an embalming service.

Gregory and his wife allege that as a result of the appellees' tortious conduct, they now live with the fear that one or both of them will someday be diagnosed as having AIDS. The Gregorys state that they "have suffered severe emotional distress and humiliation, and their marriage has all but fallen apart."

Because Gregory did not file suit for damages until almost two years after he performed the embalming procedure on John Doe, he now asks this Court to find that the causes of action which he asserts against the defendants are subject to the two-year statute of limitations found in W.Va.Code § 55–2–12(b). West Virginia Code § 55–2–12(b) (1981) provides that "[e]very personal action for which no limitation is otherwise prescribed shall be brought ... (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; ..." *See Duffy v. Ogden Newspapers, Inc.*, 170 W.Va. 318, 319, 294 S.E.2d 121, 122 (1982).

■ Noting that this Court has held that damages for emotional distress may be recovered in a battery action, *Criss v. Criss*, 177 W:Va. 749, 356 S.E.2d 620 (1987), the appellant argues first that the lower court erred when it held that exposing someone to intimate physical contact with the bodily fluids and tissues of an AIDS-infected corpse, without his knowledge or consent, did not constitute an "offensive touching" sufficient to support a claim of battery.[5]

---

which it normally uses and which Keith Gregory relied upon for notification.

**4.** When he began the embalming procedure, Gregory states that he was wearing a surgical scrub suit, athletic socks, deck shoes, and latex surgical gloves. He later added a mask, rubber sleeves, shoe covers, and an additional apron.

**5.** At this point, we note that the appellant improperly cited *Kozup v. Georgetown University*, 851 F.2d 437 (D.C.Cir.1988), for the proposition that an exposure to AIDS constitutes a battery. In *Kozup*, a child born prematurely was given blood transfusions shortly after birth. Written parental consent for the transfusions was not obtained. It was subsequently learned that the blood was contaminated, and the child contract-

However, we agree that the appellees' actions cannot be construed as a battery, and find that the lower court properly granted summary judgment in favor of the appellees.

■ The Restatement (Second) of Torts, § 13(a) and (b) (1965), states that: "[a]n actor is subject to liability to another for battery if (a) he acts *intending* to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." (Emphasis added.) The word "intent" in the Restatement denotes that "the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Id.* at § 8A.

In this case, the hospital simply released the body to the plaintiff's funeral home for preparation. The plaintiff alleges that this act resulted in an "offensive touching" which constituted a battery, because he was subsequently "exposed to body fluids and mucus membranes of the deceased 'John Doe' which were infected with the AIDS virus thereby being exposed by the extreme and outrageous conduct of the defendants intentionally or recklessly to the AIDS virus...." However, the plaintiff does not allege that the hospital acted with the intention of causing him a harmful or offensive contact, nor is there any evidence which might support such a charge. Whether the hospital negligently caused Gregory to come into contact with the body of John Doe is a separate inquiry.

We also note that the plaintiff did not allege that he suffered actual physical impairment as a result of what he refers to as an "exposure" to the AIDS virus.[6] All of the plaintiffs' claims are based solely on a fear of contracting the AIDS virus. However, Gregory has been tested for AIDS antibodies on four occasions with negative results.[7] Thus, there is no evidence that Gregory has been infected with the Human Immunodeficiency Virus (HIV), a retrovirus that causes AIDS. "It is extremely unlikely that a patient who tests HIV-negative more than six months after a potential exposure will contract the disease as a result of that exposure." *Burk v. Sage Products, Inc.,* 747 F.Supp. 285, 287 (E.D.Pa.1990), citing *Morbidity and Mortality Weekly Report,* July 21, 1989, Vol. 38, No. S–7 at 5.

Although the plaintiff undoubtedly came into contact with bodily fluids during the embalming procedure, there is no evidence indicating that he was actually exposed to a disease-causing agent. It is a well-established medical fact that the AIDS virus is transmitted through the exchange of bodily fluids, primarily blood or semen. The plaintiff admits that he was wearing proper protective gear, and he merely hypothesizes as to how a potential exposure to the virus may have occurred without offering any substantiating evidence.[8] For example, the plaintiff did not recall sticking him-

ed AIDS. Case law in the District of Columbia provided that "[A] surgeon who performs an operation without his patient's consent commits an assault for which he is liable in damages." *Barnett v. Bachrach,* 34 A.2d 626, 627 (D.C. 1943). The Court of Appeals found that substantial questions of material fact existed with regard to the battery claim against the hospital and remanded for further proceedings.

6. Section 14 of the Restatement (Second) of Torts provides further that "[t]o make the actor liable for a battery, the *harmful bodily contact* must be caused by an act done by the person whose liability is in question." "Bodily harm" is defined as "any physical impairment of the condition of another's body, or physical pain or illness." *Id.* at § 15.

7. HTLV–III tests were performed on Mr. Gregory in October 1986, January 1987, October 1987, and January 1988.

8. William Robinson, M.D., an expert retained by the Gregorys, stated in an affidavit that "to a reasonable degree of medical certainty" Gregory "was exposed to the AIDS virus as a result of the aerosolizing of the fluids of the corpse during the embalming process." When plaintiff's counsel raised this point with this Court during oral arguments, he was asked exactly how this may have resulted in an exposure, since Gregory had no open wounds or sores and was, in fact, wearing protective clothing. Counsel stated that Gregory had chapped lips, presumably implying that infected aerosols or droplets could have come into contact with chapped lips.

self or puncturing his gloves during the embalming procedure.

Exposure to the AIDS virus was recently discussed by this Court in *Johnson v. West Virginia University Hospitals, Inc.*, 186 W.Va. 648, 413 S.E.2d 889 (1991). In *Johnson*, we stated that "[t]here is no dispute that the AIDS-infected blood of the patient came into contact with the blood of the appellee. Expert testimony on behalf of the appellant acknowledged that this case involved an exposure." *Johnson*, 186 at 652, 413 S.E.2d at 893. In upholding a jury award of $1.9 million to a police officer who was bitten by an AIDS-infected patient, we noted that, "... before a recovery for emotional distress damages may be made due to a fear of contracting a disease, such as AIDS, there must first be *exposure* to the disease. If there is no exposure, damages will be denied." *Id.* 186 at 652, 413 S.E.2d at 893. Other courts have reached similar results.

For example, in *Burk v. Sage Products, Inc.*, 747 F.Supp. 285 (E.D.Pa.1990), the court noted that the plaintiff's claims "stem entirely from his fear of contracting AIDS as a result of the needle-stick injury." *Id.* at 286. However, the plaintiff could not prove that the needle which pricked him was a needle which was used on an AIDS patient. The court stated that:

> ... plaintiff cannot show that he has been exposed to the AIDS virus. Plaintiff's position is in marked contrast to the other situations where recovery for fear of contracting a disease has been held compensable, in that plaintiff in this case is unable to demonstrate an exposure to a disease-causing agent. The cases which have allowed recovery for fear of disease have done so when the plaintiffs were faced only with the question of whether they would contract the disease in the future; *the plaintiff in the instant case faces the additional question of whether he has been exposed to the AIDS virus in the first place.* The court has been unable to locate a single case, from any jurisdiction, which has permitted recovery for emotional distress arising out of a fear of contracting dis-

ease when the plaintiff cannot prove exposure to the agent which has the potential to cause the disease.

> Pennsylvania case law supports the position that plaintiff must show exposure to the AIDS virus before he can recover.

*Id.* at 287 (emphasis added). The court relied upon a Third Circuit case involving fear of contracting disease as a result of exposure to asbestos, *Wisniewski v. Johns–Manville Corp.*, 759 F.2d 271 (3rd Cir.1985), and concluded that:

> ... plaintiff's only injuries stem from his *fear* that he has been exposed to the disease. *Wisniewski* stands for the proposition that while injuries stemming from a fear of contracting illness after exposure to a disease-causing agent may present compensable damages, injuries stemming from fear of the initial exposure do not. Because plaintiff cannot show that he has been exposed to the AIDS virus, his claim for damages arising out of his fear of contracting AIDS must fail.

*Id.* at 288.

More recently, in *Faya v. Estate of Almaraz*, No. 90345011 (Md.Cir.Ct., May 23, 1991), the plaintiff charged an AIDS-infected surgeon with negligence (lack of informed consent), intentional infliction of emotional distress, fraudulent misrepresentation, and breach of contract because of her "fear that she was exposed" to the AIDS virus during surgery performed by the doctor. The circuit court found that she did not allege sufficient facts to support her allegation that she was even exposed to AIDS:

> Because there have been no reported cases of transmission of AIDS from a surgeon to a patient, such transmission is only a theoretical possibility when proper barrier techniques are employed.... Plaintiff has not alleged that Dr. Almaraz failed to use proper barrier techniques. Furthermore, plaintiff has not alleged that any incident or accident occurred during surgery that would have caused Dr. Almaraz's blood to enter her body.

*Faya,* slip op. at 8. The court concluded that under the principles of *Burk, supra,* "without proof of exposure, that is, without a positive HIV test, the plaintiff cannot present compensable damages."[9] *Id.* at 9.

■ Based upon our reading of these and other similar cases, as well as our own opinion in *Johnson,* we conclude that if a suit for damages is based solely upon the plaintiff's fear of contracting AIDS, but there is no evidence of an actual exposure to the virus, the fear is unreasonable, and this Court will not recognize a legally compensable injury.

■ The plaintiffs also ask this Court to find that the two-year statute of limitations in W.Va.Code § 55–2–12(b) applies to claims for negligent and intentional infliction of emotional distress. In dismissing these claims as time-barred by W.Va.Code § 55–2–12(c), the lower court relied on *Christman v. American Cyanamid Co.,* 578 F.Supp. 63 (N.D.W.Va.1983), and our decision in *Rodgers v. Corporation of Harpers Ferry,* 179 W.Va. 637, 371 S.E.2d 358 (1988). In *Christman,* the District Court stated that "the West Virginia Legislature intended 55–7–8a to apply to those common law tort actions involving physical or bodily injuries," and concluded that the intentional infliction of emotional distress and invasion of privacy were personal actions subject to the one-year statute of limitations. *Id.* at 66. In *Rodgers,* we reiterated that:

> The primary statute of limitations for personal injuries in West Virginia is the two-year statute of limitations in W.Va. Code § 55–2–12(b). The one-year statute of limitations in W.Va. Code § 55–2–12(c) applies to civil actions which do not survive the death of a party. Consequently, *personal tort actions such as* libel, defamation, *intentional infliction of emotional distress,* false arrest, false imprisonment, and malicious prosecution *take the one-year statute of limitations* because they are excluded from statutory

survivability under W.Va. Code § 55–7–8a(a) (1981),.... (Emphasis added.)

*Id.* 179 W.Va. at 640, 371 S.E.2d at 361. Claims for the negligent infliction of emotional distress have not been recognized by this Court, as we have expressed a reluctance to permit recovery for emotional distress in the absence of an intentional tort. *Monteleone v. Co–Operative Transit Co.,* 128 W.Va. 340, 36 S.E.2d 475 (1945); *Toler v. Cassinelli,* 129 W.Va. 591, 41 S.E.2d 672 (1946); *Harless v. First National Bank of Fairmont,* 169 W.Va. 673, 687–91, 289 S.E.2d 692, 701–02 (1982). Thus, we conclude that the lower court properly granted summary judgment and dismissed the plaintiffs' emotional distress claims as barred by the one-year statute of limitations.

Finally, the plaintiffs' complaint included claims of negligent and intentional misrepresentation which the lower court also dismissed as time-barred by W.Va.Code § 55–2–12(c). The plaintiffs argue that because the statute of limitations for fraud and deceit claims is two years, the lower court erred in applying the one-year statute of limitations, W.Va.Code § 55–2–12(c), to their misrepresentation claim.

West Virginia Code § 55–7–8a (1981) is to be read *in pari materia* with W.Va. Code § 55–2–12, provides that:

> In addition to the causes of action which survive at common law, causes of action for injuries to property, real or personal, or injuries to the person and not resulting in death, or for *deceit or fraud* also shall survive; and such actions may be brought notwithstanding the death of the person entitled to recover or the death of the person liable. (Emphasis added.)

"Chapter 55–7–8a(f) limits the survivability of personal tort actions to those set forth in that subdivision as the language provides that 'nothing contained in this section shall be construed to extend the time within which an action for any other tort shall be brought.'" *Christman v. American Cyanamid Co.,* 578 F.Supp. 63, 66 (1983).

---

9. *See also, Rossi v. Estate of Almaraz,* 59 U.S.L.W. 2748, 1991 Westlaw 166924 (Md.Cir. Ct., May 23, 1991), in which the plaintiff's complaint (alleging negligence/lack of informed consent, loss of consortium, and fraud/concealment) was dismissed because it was based solely on fear of exposure to AIDS, without facts to support the allegation that an exposure occurred.

**430**

■ Even though "misrepresentation" is not listed in W.Va.Code § 55–7–8a along with "deceit" and "fraud," we believe that it is "sufficiently related to an action for fraud and deceit so that the two-year statute of limitations applies under W.Va.Code, 55–2–12, and W.Va.Code, 55–7–8a." *Stanley v. Sewell Coal Co.*, 169 W.Va. 72, 77, 285 S.E.2d 679, 683 (1981). However, in order to establish fraud, the circumstances must be clearly alleged and proved. W.V.R.C.P. 8(e)(1), 9(b); *Hager v. Exxon Corp.*, 161 W.Va. 278, 282–84, 241 S.E.2d 920, 923 (1978). In this case, the plaintiffs' complaint did not clearly or sufficiently allege either misrepresentation, fraud, or deceit. Consequently, such a claim will not be considered by this Court.

For the reasons set forth above, the orders of the Circuit Court of Mercer County dismissing the appellants' claims are hereby affirmed.

Affirmed.